AO 241 (Rev. 09/17)

**FILED**

Mar 27, 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

### PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
### HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: *EASTERN* | |
|---|---|---|
| Name (under which you were convicted): *KENNETH J. WEST* | | Docket or Case No.: *1:22-CV-00172-KES-CDB* |
| Place of Confinement: *VALLEY STATE PRISON PO BOX 96 CHOWCHILLA, CA. 93610* | Prisoner No.: *BH0941* | |
| Petitioner (include the name under which you were convicted) *KENNETH J. WEST* | v. | Respondent (authorized person having custody of petitioner) *ATTORNEY GENERAL OF THE STATE OF CALIFORNIA* |
| The Attorney General of the State of: | | |

PETITION    *2ND AMENDED PETITION*
*COMPLETION OF EXHASTING*
*STATE REMEDIES.*

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   *SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO*
   *1100 VAN NESS AVE FRESNO, CA. 93724*

   (b) Criminal docket or case number (if you know): *F 15904838*

2. (a) Date of the judgment of conviction (if you know): *MAY 21, 2018*

   (b) Date of sentencing: *8-6-2018*

3. Length of sentence: *165 YEARS TO LIFE*

4. In this case, were you convicted on more than one count or of more than one crime? ☒ Yes    ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case:

   *288(A) COUNTS 1, 2, 4-13*
   *288(C) COUNTS 14 & 16*

**RECEIVED**

MAR 27 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

6. (a) What was your plea? (Check one)

   ☒ (1)  Not guilty    ☐ (3)  Nolo contendere (no contest)

   ☐ (2)  Guilty    ☐ (4)  Insanity plea

Page 2 of 16

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _N/A_

(c) If you went to trial, what kind of trial did you have? (Check one)

     ☒ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

     ☒ Yes    ☐ No

8.    Did you appeal from the judgment of conviction?

     ☒ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court: _Court of Appeal, Fifth Appelate District_

(b) Docket or case number (if you know): _F077999_

(c) Result: _Denied_

(d) Date of result (if you know): _Dec 2020_

(e) Citation to the case (if you know): _____

(f) Grounds raised: _Ineffective Council & Gross Sentencing & Statue of Limitations._

(g) Did you seek further review by a higher state court?    ☒ Yes    ☐ No

    If yes, answer the following:

    (1) Name of court: _Supreme Court of California_

    (2) Docket or case number (if you know): _S266659_

    (3) Result: _Denied Review_

AO 241 (Rev. 09/17)

(4) Date of result (if you know): *2-24-2021*

(5) Citation to the case (if you know):

(6) Grounds raised: *PETITION OF lower Court ORDER.*
*REQUEST TO REVIEW.*

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): *N/A*

(2) Result: *N/A*

(3) Date of result (if you know): *N/A*

(4) Citation to the case (if you know): *N/A*

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☒ Yes    ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: *SUPERIOR Court OF California / FRESNO*

(2) Docket or case number (if you know): *23 CRWR 686980*

(3) Date of filing (if you know): *3-29-2023*

(4) Nature of the proceeding: *EXHAUST STATE REMEDIES*

(5) Grounds raised: *INEFFECTIVE Council, Gross Sentencing*
*& STATUE OF LIMITATIONS*

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☒ No

(7) Result: *Denied*

AO 241 (Rev. 09/17)

(8) Date of result (if you know): 6-2-2023

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Court of Appeal, Fifth Appelate District

(2) Docket or case number (if you know): F086549 & F087039

(3) Date of filing (if you know): 7-14-2023 & 10-23-2023

(4) Nature of the proceeding: Appeal lower court & exhaust state remedies

(5) Grounds raised: Ineffective Council, Cross Sentencing & State of Limitations.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☒ No

(7) Result: Denied

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: Supreme Court of California

(2) Docket or case number (if you know): S283356

(3) Date of filing (if you know): 1/4/2024

(4) Nature of the proceeding: Petition For Review

(5) Grounds raised: Ineffective Council, Cross Sentencing & State of Limitations

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☒ No

(7) Result:    DENIED

(8) Date of result (if you know):    3/12/2024

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☒ Yes    ☐ No

(2) Second petition:    ☒ Yes    ☐ No

(3) Third petition:    ☒ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

N/A

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**    DENIED OF EFFECTIVE ASSISTANCE OF COUNCIL DENIED MY CONSTITUTIONAL 6TH AMENDMENT RIGHT.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

PLEASE SEE ATTACHMENT 1A

(b) If you did not exhaust your state remedies on Ground One, explain why:    N/A

AO 241 (Rev. 09/17)

(c)      **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ☑ Yes      ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:     N/A

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes      ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     N/A

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):     N/A

Date of the court's decision:     N/A

Result (attach a copy of the court's opinion or order, if available):     N/A

(3) Did you receive a hearing on your motion or petition?      ☐ Yes      ☑ No

(4) Did you appeal from the denial of your motion or petition?      ☐ Yes      ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?      ☐ Yes      ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:     N/A

Docket or case number (if you know):     N/A

Date of the court's decision:     N/A

Result (attach a copy of the court's opinion or order, if available):     N/A

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:     N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One: _EXHAUSTED ALL STATE REMEDIES_

_IN ALL 3 LOWER OR STATE COURTS_

**GROUND TWO:** _GROSS & UNFAIR SENTENCING IMPOSED BY COURT_
_DENIED MY CONSTITUTIONAL 8TH AMENDMENT RIGHT._

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_SEE ATTACHED DOCUMENT & PREVIOUSLY FILED PETITION_

(b) If you did not exhaust your state remedies on Ground Two, explain why: _N/A_

(c)     **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

    (2) If you did **not** raise this issue in your direct appeal, explain why: _N/A_

(d)     **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    ☐ Yes     ☑ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _N/A_

    Name and location of the court where the motion or petition was filed: _N/A_

    Docket or case number (if you know): _N/A_

Date of the court's decision: _N/A_

Result (attach a copy of the court's opinion or order, if available): _N/A_

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☒ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _N/A_

Docket or case number (if you know): _N/A_

Date of the court's decision: _N/A_

Result (attach a copy of the court's opinion or order, if available): _N/A_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_N/A_

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two :

_EXHAUSTED ALL STATE COURT REMEDIES_

**GROUND THREE:**  _DENIED MY CONSTITUTIONAL 14TH AMENDMENT RIGHT_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_STATUE OF LIMITATIONS / SEE DOCUMENTS PREVIOUSLY FILED._

(b) If you did not exhaust your state remedies on Ground Three, explain why: _N/A_____

_____

_____

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _N/A_____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____N/A_____

Name and location of the court where the motion or petition was filed: _N/A_____

_____

Docket or case number (if you know): ____N/A_____

Date of the court's decision: ____N/A_____

Result (attach a copy of the court's opinion or order, if available): _N/A_____

_____

(3) Did you receive a hearing on your motion or petition?                    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?              ☐ Yes    ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _N/A_____

_____

Docket or case number (if you know): ____N/A_____

Date of the court's decision: ____N/A_____

Result (attach a copy of the court's opinion or order, if available): _N/A_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _Exhasted All State Court Remedies_

**GROUND FOUR:**    N/A

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

N/A

(b) If you did not exhaust your state remedies on Ground Four, explain why:

N/A

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:    N/A

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    N/A

Name and location of the court where the motion or petition was filed: _N/A_____

_____

Docket or case number (if you know): ___N/A_____

Date of the court's decision: ___N/A_____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?          ❒ Yes   ❒ No

(4) Did you appeal from the denial of your motion or petition?      ❒ Yes   ❒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ❒ Yes   ❒ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _N/A_____

_____

Docket or case number (if you know): ___N/A_____

Date of the court's decision: ___N/A_____

Result (attach a copy of the court's opinion or order, if available): _N/A_____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_N/A_____

_____

_____

_____

_____

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four: _N/A_____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

13.  Please answer these additional questions about the petition you are filing:

(a)  Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?  ☐ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:    *N/A*

(b)  Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

*All State Remedies have Been Exhausted*

14.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ☒ Yes    ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.    *US District Court Eastern District Case 1:22-CV-00172-KES-CDB I have been Granted Stay until State Remedies have Been Exhausted*

15.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ☐ Yes    ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.    *N/A*

AO 241 (Rev. 09/17)

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing: _Scott Baly County of Fresno Defenders_

_Office 2135 Fresno St. Suite 100 Fresno, CA. 93721-1718_

(b) At arraignment and plea: _Scott Baly_

(c) At trial: _Scott Baly_

(d) At sentencing: _Scott Baly_

(e) On appeal: _Stephen Lathrop 904 Silver Spur RD #430_

_Rolling Hills Estates, CA 90274_

(f) In any post-conviction proceeding: _N/A_

(g) On appeal from any ruling against you in a post-conviction proceeding: _N/A_

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?        ☐ Yes   ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_N/A_

(b) Give the date the other sentence was imposed: _N/A_

(c) Give the length of the other sentence: _N/A_

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?        ☐ Yes   ☑ No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

_N/A_

AO 241 (Rev. 09/17)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

(1)      A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in
custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)      the date on which the judgment became final by the conclusion of direct review or the expiration
of the time for seeking such review;

(B)      the date on which the impediment to filing an application created by State action in violation of
the Constitution or laws of the United States is removed, if the applicant was prevented from
filing by such state action;

(C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court,
if the right has been newly recognized by the Supreme Court and made retroactively applicable to
cases on collateral review; or

(D)      the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: *New Trial, Overturn Conviction Sentence Reduction or Resentencing.*

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *3/24/24* (month, date, year).

Executed (signed) on *3/16/24* (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____
_____
_____
_____

PO Box 96
CHOWCHILLA, CA. 93610

CALIFORNIA STATE SUPREME COURT
350 McAllister Street
SAN FRANCISCO, CA. 94102

SUPREME COURT
FILED
JAN 10 2024
Jorge Navarrete Clerk
_____ Deputy

KENNETH JAMES WEST

PETITIONER

vs

ATTORNEY GENERAL OF THE
STATE OF CALIFORNIA

RESPONDENT

PETITION FOR REVIEW
CASE # F087039
(FRESNO SUPER. CT. NO. 23CRWR686980)

I KENNETH JAMES WEST HERE BY
REQUEST REVIEW OF ABOVE CASE THAT WAS
PETITIONED IN THE COURT OF APPEAL OF THE
STATE OF CALIFORNIA. FILED ON 10.23.2023
"WRIT OF HABEAS CORPUS"

KENNETH JAMES WEST

1/4/24

ENCLOSED;
ATTACHMENTS:
1/ FO86549 : ORDER
2/ FO86549 : NOTICE 8/10/23
3/ FO87039 : ORDER
4/ WRIT OF HABEAS CORPUS

RECEIVED
JAN 10 2024
CLERK SUPREME COURT

SUPREME COURT
FILED

FEB 2 1 2024

Jorge Navarrete Clerk

Deputy

Court of Appeal, Fifth Appellate District - No. F087039

S283356

# IN THE SUPREME COURT OF CALIFORNIA

In re KENNETH JAMES WEST on Habeas Corpus.

The time for granting or denying review in the above-entitled matter is hereby extended to and including April 9, 2024, or the date upon which review is either granted or denied.

**GUERRERO**

*Chief Justice*

SUPREME COURT
**FILED**

MAR 12 2024

Jorge Navarrete **Clerk**

_____
Deputy

Court of Appeal, Fifth Appellate District - No. F087039

S283356

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re KENNETH JAMES WEST on Habeas Corpus.

The petition for review is denied.

**GUERRERO**
*Chief Justice*

HC-001

Name: __Kenneth James West__

Address: __Valley State Prison__
__Po Box 96__
__Chowchilla, CA. 93610__
_____
_____

CDC or ID Number: __BH0941__

__Court of Appeal of the State__
__of California in and for the__
__5th Appellate District__
__2424 Ventura St. Fresno, CA. 93721__
*(Court)*

__Kenneth James West__
Petitioner

vs.

__Attorney General of the State of__
Respondent __California__

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original of the petition and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2018). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page 1 of 6

Form Approved for Optional Use
Judicial Council of California
HC-001 [Rev. January 1, 2019]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courts.ca.gov

HC-001

**This petition concerns:**

[X] A conviction      [ ] Parole

[X] A sentence      [ ] Credits

[ ] Jail or prison conditions      [ ] Prison discipline

[X] Other (specify): *STATE EXHAUSTION FOR FEDERAL REVIEW. Appeal of lower Court.*

1. Your name: KENNETH JAMES WEST

2. Where are you incarcerated? VALLEY STATE PRISON

3. Why are you in custody? [X] Criminal conviction    [ ] Civil commitment

   *Answer items a through i to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   13 CT. PC 288(a) / 3CT. PC288 (C)(1)

   b. Penal or other code sections: PC 667.61 / PC 803 (F)

   c. Name and location of sentencing or committing court:
   SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO
   1100 VAN NESS AVE. FRESNO, CA. 93724

   d. Case number: F15904838

   e. Date convicted or committed: 5.21.2018

   f. Date sentenced: 8.6.2018

   g. Length of sentence: 165 TO LIFE

   h. When do you expect to be released? THIS IS A DEATH SENTENCE

   i. Were you represented by counsel in the trial court? [X] Yes   [ ] No   *If yes, state the attorney's name and address:*
   SCOTT BALY / PUBLIC DEFENDER
   2135 FRESNO ST. SUITE 100
   FRESNO, CA. 93721-1718

4. What was the LAST plea you entered? *(Check one):*

   [X] Not guilty   [ ] Guilty   [ ] Nolo contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

HC-001

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

I RESUBMIT & REQUEST REVIEW FOR ALL GROUNDS PRESENTED TO THE LOWER COURT. IN CONJUNCTION WITH MY PREVIOUSLY SUBMITTED APPEAL. ASK THAT MY CASE BE CONSIDERED AS A WHOLE.

1 ATTACHMENT IN ARGUMENT AGAINST LOWER COURTS DECISION.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*.

SEE ATTACHED DOCUMENT & PREVIOUSLY FILED PETITION GROUNDS RAISED

b. Supporting documents:

Attach declarations, relevant records, transcripts, or other documents supporting your claim. (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474.)

SEE ATTACHED DOCUMENT & PREVIOUSLY FILED PETITION, GROUNDS RAISED

c. Supporting cases, rules, or other authority *(optional)*:

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

**PETITION FOR WRIT OF HABEAS CORPUS**

HC-001

7. **Ground 2 or Ground _____** *(if applicable):*

a. Supporting facts:

b. Supporting documents:

c. Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, sentence, or commitment? ☒ Yes ☐ No    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Division of Superior Court"):
*COURT OF APPEAL, FIFTH APPELLATE DISTRICT OF CALIFORNIA*

b. Result: *DISMISS W/O PREDJUDICE*    c. Date of decision: _____

d. Case number or citation of opinion, if known: *F077999*

e. Issues raised: (1) *INEFFECTIVE ASSISTANCE OF TRIAL COUNCIL*

    (2) *GROSS SENTENCING*

    (3) *STATUE OF LIMITATIONS*

f. Were you represented by counsel on appeal? ☒ Yes ☐ No    If yes, state the attorney's name and address, if known:
*STEPHEN LATHROP*
*904 Silver SPUR RD. #430 Rolling Hills ESTATES, CA. 90274*

9. Did you seek review in the California Supreme Court? ☒ Yes ☐ No    If yes, give the following information:

a. Result: *DENIED REVIEW*    b. Date of decision: *2.24.2021*

c. Case number or citation of opinion, if known: *S266059*

d. Issues raised: (1) _____

    (2) _____

    (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal (see *In re Dixon* (1953) 41 Cal.2d 756, 759):
*FACTS WERE NOT KNOWN AT TIME OF ORIGINAL APPEAL, APPELLATE COUNCIL REFUSED TO BRING ISSUES REQUESTED. FEDERAL COURT ORDER EXISTS TO EXHAUST STATE REMEDIES*

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Dexter* (1979) 25 Cal.3d 921, 925.) Explain what administrative review you sought or explain why you did not seek such review:

_____
_____
_____
_____
_____
_____
_____
_____
_____

b. Did you seek the highest level of administrative review available? ☐ Yes ☐ No
*Attach documents that show you have exhausted your administrative remedies. (See People v. Duvall (1995) 9 Cal.4th 464, 474.)*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court, including this court? (See *In re Clark* (1993) 5 Cal.4th 750, 767–769 and *In re Miller* (1941) 17 Cal.2d 734, 735.)
☒ Yes    If yes, continue with number 13.    ☐ No    If no, skip to number 15.

HC-001

13 a. (1) Name of court: UNITED STATES DISTRICT COURT FOR EASTERN DISTRICT

   (2) Nature of proceeding (for example, "habeas corpus petition"): HABEAS CORPUS PETITION

   (3) Issues raised: (a) INEFFECTIVE ASSISTANCE OF COUNCIL "FAILURE TO OBJECT"

   (b) GROSS/UNFAIR SENTENENCE - VIOLATIONS OF CONSTITUTIONAL
   RIGHTS

   (4) Result (attach order or explain why unavailable): _____

   (5) Date of decision: _____

b. (1) Name of court: UNITED STATES DISTRICT COURT FOR EASTERN DISTRICT OF
   CALIFORNIA

   (2) Nature of proceeding: FEDERAL HABEAS CORPUS PETITION

   (3) Issues raised: (a) _____

   (b) _____

   (4) Result (attach order or explain why unavailable): STAY IS GRANTED

   (5) Date of decision: 4.21.23

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Robbins (1998) 18 Cal.4th 770, 780.)
ATTORNEY MALFEASANCE, FAILURE TO DIVULGE RECORD, DISCOVERY & CASE
FILE UPON CONCLUSION OF HANDLING CASE, IMPEDIMENT TO TIMELY
FILING AS ISSUES WERE HIDDEN & RECENTLY DISCOVERED.

16. Are you presently represented by counsel? ☐ Yes ☒ No   If yes, state the attorney's name and address, if known:
REQUESTING COUNCEL BE APPOINTED.

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes ☐ No   If yes, explain:
PETITION HELD IN ABEYANCE PENDING STATE EXHAUSTIONS

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date 9/13/23                                     _____
                                                (SIGNATURE OF PETITIONER)

HC-001 [Rev. January 1, 2019]        **PETITION FOR WRIT OF HABEAS CORPUS**        Page 6 of 6

For your protection and privacy, please press the Clear
This Form button after you have printed the form.    [Print this form]  [Save this form]    [Clear this form]

Court of Appeal, Fifth Appellate District
Brian Cotta, Clerk/Executive Officer
Electronically FILED on 12/27/2023 by D MONOPOLI, Deputy Clerk

IN THE

**COURT OF APPEAL OF THE STATE OF CALIFORNIA**

IN AND FOR THE

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re | F087039 |
| KENNETH JAMES WEST, | (Fresno Super. Ct. No. 23CRWR686980) |
| On Habeas Corpus. | **ORDER** |

**BY THE COURT:**\*

    The "Petition for Writ of Habeas Corpus," filed on October 23, 2023, is denied.

Levy, A.P.J.

---

\*    Before Levy, A.P.J., Meehan, J. and DeSantos, J.

IN THE

## COURT OF APPEAL OF THE STATE OF CALIFORNIA

IN AND FOR THE

## FIFTH APPELLATE DISTRICT

| In re | F086549 |
|---|---|
| KENNETH J. WEST, | (Fresno Super. Ct. No. F15904838) |
| On Habeas Corpus. | **ORDER** |

**BY THE COURT:***

The "Petition for Writ of Habeas Corpus," filed on July 14, 2023, is denied without prejudice. It is petitioner's burden to provide a complete record of his efforts to seek review and exhaust his judicial remedies by first presenting his claims to the superior court. (*In re Hillery* (1962) 202 Cal.App.2d 293, 294.) Petitioner neither provided a copy of the petition filed with the superior court, nor the superior court's order ruling on the petition. Additionally, petitioner has failed to set forth his claims for relief with adequate specificity. "The petition should both (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)

Levy, A.P.J.

---

*        Before Levy, A.P.J., Peña, J. and Snauffer, J.

1  Kenneth James West #BH0941

2  Valley State Prison

3  Po Box 96

4  Chowchilla, Ca. 93610

5  8/3/2023

6  In Pro Se

7

8              **COURT OF APPEAL OF THE STATE OF CALIFORNIA**

9                          **FIFTH APELLATE DISTRICT**

10

11  Kenneth James West                Case No. *F086549*

12  Petitioner                        REQUEST FOR EXTENSION OF TIME

13  VS.                               REQUEST TO APPOINT COUNSEL

14  Attorney General Of The State Of California

15  Respondent

16

17  This request is made to comply with this courts denial of previously submitted habeas corpus

18  petition, in compliance with the directions from the court to furnish documentation currently not

19  available. At this current time, Petitioner estimates he requires 120 days additional time to aquire

20  transcripts and other documents from previous counsel who did not furnish those copies to

21  petitioner. Petitioner has made a lawful request of the persons holding these documents and may

22  need assistance from this court in complying with this order. As petitioner is a layperson in law

23  he requests the court extend the time to file in this court.

24  Further, petitioner again makes a request for counsel to be appointed. This request is made for

25  the following reasons.

RECEIVE[D]

AUG 0 7

FIFTH DISTRI[CT]
COURT OF AP[PEAL]

SCANNED/EMAILED
AUG 0 7 2023

1. The extreme complexity of this case and need to coordinate with persons outside the prison.

2. Petitioner is currently assisted by a "jailhouse lawyer" who has only a layperson understanding of the law, and is assisting upon request of petitioners wife.

3. Petitioner has been unable to gain legal help due to his case factors presenting a safety concern if they become knowledgable to the inmate population. Th person assisting petitioner will be leaving soon and cannot assist for much longer.

4. Petitioner enacted this state appeal upon direction from the federal court to exhaust certain state issues. Petitioner currently has a stayed petition in federal court. As such, this appeal is initiated upon order of the higher court.

5. The appointment of counsel is necessary to protect petitioners due process constitutional rights on state appeal. Petitioner is entitled to an attorney on state appeal.

An order extending the time to submit by 120 days additional time, and appointment of counsel should be made. Petitioner respectfully requests this court do so.

I swear the forgoing to be true and correct, executed on 8/3/2023.

**Kenneth James West**

#BH0941

# COURT OF APPEAL

Fifth Appellate District
State of California
2424 Ventura St., Fresno, CA 93721
(559) 445-5491 - www.courts.ca.gov/5dca

| | | |
|---|---|---|
| Mariana M. Cordova<br>Assistant Clerk/Executive Officer | Brian Cotta<br>Clerk/Executive Officer | Shandra Santana<br>Supervising Deputy Clerk |

August 10, 2023

Kenneth James West, CDC# BH0941
Valley State Prison
P.O. Box 96
Chowchilla, CA 93610

Re:  F086549 - In re KENNETH J. WEST on Habeas Corpus

Dear Mr. West:

The court has received your request dated August 3, 2023, and authorized the following reply:

This court's jurisdiction is limited by the constitution to appeals and original proceedings (writ). (Cal. Const., art. VI, §§ 10-11.)  Your request does not qualify as either an appeal or writ. Therefore, this court cannot consider and decide it and is returning it to you unfiled.

Even if this court had jurisdiction, it appears you are requesting an extension of time to file a petition for writ of habeas corpus.  Since there are no fixed statutory time limits for filing such a writ, your request would be denied as unnecessary.  Insofar as your request asserts an explanation for not being able to file the petition now, your remedy is to include that explanation in the petition you may file later.

A blank Habeas Corpus form (HC-001) is enclosed for your convenience.

Very truly yours,

Brian Cotta, Clerk/Executive Officer

By: Sergio Arellano
Deputy Clerk

No. F077999

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

THE PEOPLE,

    Plaintiff and Respondent,

    v.

KENNETH JAMES WEST,

    Defendant and Appellant.

Fresno County Superior Court

Case No. F15904838

Hon. Don D. Penner, Judge

**Appellant Kenneth James West's Opening Brief**

Stephen M. Lathrop (State Bar No. 126813)

Certified Appellate Law Specialist
State Bar of California, Board of Legal Specialization

904 Silver Spur Road #430
Rolling Hills Estates, CA 90274
Tel. (310) 237-1000, ext. 3; Fax (310) 237-1010
Email: lathrop126813@gmail.com

By Appointment of the Court of Appeal
Independent Case System

Attorney for Defendant/Appellant
Kenneth James West

# Table of Contents

                                                                    **Page**

Appellant Kenneth James West's Opening Brief . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of Appealability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    The prosecution's case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             (1)    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             (2)    Incidents involving Russell (counts 1 and 2). . . . . . . . . . . 11

             (3)    Incidents involving Timothy (counts 4 through 9) . . . . . . 11

             (4)    Incidents involving Cody (counts 10, 11, 12, 15, and 16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

             (5)    Appellant's admissions to brother-in-law James Corey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             (6)    Testimony of David Love on Child Sexual Abuse Accommodation Syndrome . . . . . . . . . . . . . . . . . . . . . . . 15

      B.    The defense case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1.    Appellant's sentence on counts 1 and 2 (15 years-to-life pursuant to the One Strike law) violates the ex post facto clauses of the United States and California Constitutions because it imposes a greater punishment for his offenses than was authorized by law when the offenses were committed, thereby requiring that the sentences thereon be vacated and the case remanded for resentencing . . . . . . . . . .  19

2.    The trial court imposed consecutive life sentences on count 2 and counts 4 through 12, inclusive, under the misunderstanding that the One Strike Law mandated full, consecutive sentencing; but the court had the discretion to impose those sentences concurrent to count 1, and thus remand for resentencing is warranted . . . . . . . . . . . .  23

      A.    The trial court retained discretion to impose concurrent one-strike indeterminate terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

      B.    Remand for resentencing is warranted because the trial court imposed sentence without an accurate understanding of its discretion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

      C.    If the issue has been forfeited by the failure of trial defense counsel to object to consecutive terms, then the Court should exercise its discretion to address the issue in the first instance; alternatively, appellant received ineffective assistance of trial defense counsel . . . . . . . . . . . . . . . . . . . . . . .  31

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Proof of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

3

# Table of Authorities

Page(s)

**Federal Cases**

*Huynh v. King* (11th Cir. 1996)
    95 F.3d 1052 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Kimmelman v. Morrison* (1986)
    477 U.S. 365 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Mempa v. Rhay* (1967)
    389 U.S. 128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Strickland v. Washington* (1984)
    466 U.S. 668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Townsend v. Burke* (1948)
    334 U.S. 736 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Tucker* (1972)
    404 U.S. 443 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Weaver v. Graham* (1981)
    450 U.S. 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**State Cases**

*In re Perez* (1966)
    65 Cal.2d 224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*People v. Alvarez* (2002)
    100 Cal.App.4th 1170 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*People v. Anderson* (2009)
    47 Cal.4th 92 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*People v. Anjell* (1979)
    100 Cal.App.3d 189 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*People v. Belmontes* (1983)
  34 Cal.3d 335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29, 30

*People v. Bradford* (1976)
  17 Cal.3d 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*People v. Bruce G.* (2002)
  97 Cal.App.4th 1233 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*People v. Crittenden* (1994)
  9 Cal.4th 83 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*People v. Delles* (1968)
  69 Cal.2d 906 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Deloza* (1998)
  18 Cal.4th 585 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Downey* (2000)
  82 Cal.App.4th 899 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*People v. Fuhrman* (1997)
  16 Cal.4th 930 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*People v. Hiscox* (2006)
  136 Cal.App.4th 253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 23

*People v. Jones* (2007)
  157 Cal.App.4th 1373 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*People v. Ledesma* (1987)
  43 Cal.3d 171 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*People v. Lewis* (1990)
  50 Cal.3d 262 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*People v. Mason* (1991)
  52 Cal.3d 909 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*People v. Meloney* (2003)
  30 Cal.4th 1145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*People v. Murphy* (1998)
  65 Cal.App.4th 35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 29

*People v. Rodriguez* (2005)
  130 Cal.App.4th 1257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26, 27, 34

*People v. Scott* (1994)
  9 Cal.4th 331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*People v. Shaw* (2004)
  122 Cal.App.4th 453 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*People v. Sotomayor* (1996)
  47 Cal.App.4th 382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*People v. Superior Court (Romero)* (1996)
  13 Cal.4th 497 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*People v. Valdez* (2011)
  193 Cal.App.4th 1515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Valenti* (2016)
  243 Cal.App.4th 1140 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Statutes, Constitutions and Rules**

Cal. Const., art. I, § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

Cal. Const., art. I, § 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Cal. Rules of Court, rule 4.406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Cal. Rules of Court, rule 4.433(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Pen. Code § 288, subd. (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Pen. Code § 288, subd. (c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

6

Pen. Code, § 667.6, subd. (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Pen. Code, § 667.6, subd. (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Pen. Code, § 667.61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Pen. Code, § 667.61, subd. (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Pen. Code, § 667.61, subd. (g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Pen. Code, § 669 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

Pen. Code, § 1170, subd. (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Pen. Code, § 1193 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Pen. Code, § 1237, subd. (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. Const., art. I, § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

U.S. Const., 6th & 14th Amends. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

/ / /

**Introduction**

This appeal is from a judgment entered after a jury trial with guilty

verdicts of eleven counts of committing a lewd act upon a child under the age of

14 (Pen. Code § 288, subd. (a); counts 1, 2, and 4 through 12) and two counts of

committing a lewd act upon a child of 14 or 15 years of age when appellant was

at least 10 years older than the child (Pen. Code § 288, subd. (c)(1); counts 15

and 16), with a jury true finding that the section 288, subdivision (a) offenses

were committed against multiple victims within the meaning of Penal Code

section 667.61, subdivision (e). (RT 6:1488-1494; CT 172-199.)

**Statement of the Case**

By amended information filed June 9, 2017, further amended during trial

to dismiss counts 3, 13 and 14, the District Attorney of Fresno County charged

appellant Kenneth James West with 11 counts of committing a lewd act upon a

child under the age of 14 (Pen. Code § 288, subd. (a)); counts 1, 2, and 4 through

12) and two counts of committing a lewd act upon a child of 14 or 15 years of

age when appellant was at least 10 years older than the child (Pen. Code § 288,

subd. (c)(1); counts 15 and 16), as follows:[1]

---

[1]    The victims were variously referred to during trial by "John Doe"
and their first name; none of the victims share the same surname as appellant.

8

| Count | Penal Code | Victim | Date |
|---|---|---|---|
| 1 | § 288(a) | John Doe III (Russell) | Jan. 1, 1995 to Dec. 31, 1996 |
| 2 | § 288(a) | John Doe III (Russell) | Jan. 1, 1995 to June 28, 1996 |
| 4 | § 288(a) | John Doe II (Timothy) | March 1, 1997 to Dec. 31, 1997 |
| 5 | § 288(a) | John Doe II (Timothy) | March 1, 1997 to Dec. 31, 1997 |
| 6 | § 288(a) | John Doe II (Timothy) | March 1, 1997 to June 30, 1998 |
| 7 | § 288(a) | John Doe II (Timothy) | March 1, 1997 to Dec. 31, 1997 |
| 8 | § 288(a) | John Doe II (Timothy) | March 1, 1997 to Dec. 31, 1997 |
| 9 | § 288(a) | John Doe II (Timothy) | June 1, 1998 to July 31, 2000 |
| 10 | § 288(a) | John Doe I (Cody) | June 11, 2007 to April 10, 2008 |
| 11 | § 288(a) | John Doe I (Cody) | June 11, 2008 to June 10, 2009 |
| 12 | § 288(a) | John Doe I (Cody) | June 11, 2008 to June 10, 2009 |
| 15 | § 288(c)(1) | John Doe I (Cody) | June 11, 2014 to March 13, 2015 |
| 16 | § 288(c)(1) | John Doe I (Cody) | March 14, 2015 |

It was further alleged that appellant committed the charged offenses against multiple victims within the meaning of Penal Code section 667.61, subdivision (e). Statute of limitations tolling provisions also were alleged. (CT 80-95, 168; RT 6:1341-1344.)

9

A jury found appellant guilty as charged, except section 667.61 One-Strike allegations were *not* returned as to counts 15 and 16. (RT 6:1488-1494; CT 172-199.)

The court imposed an aggregate indeterminate prison term of 165 years-to-life, calculated as 15 years-to-life on each of counts 1, 2, and 4 through 12, consecutive, plus concurrent terms of one year on each of counts 15 and 16. Credit for time served was awarded and a restitution fine was imposed. (RT 6:1518-1522; CT 268-277.)

A timely notice of appeal from the judgment was filed. (CT 266-267.)

### Statement of Appealability

The appeal is from a final judgment following trial. (Pen. Code, § 1237, subd. (a); *People v. Delles* (1968) 69 Cal.2d 906, 908.)

### Statement of Facts

**A.    The prosecution's case.**

**(1)    Introduction.**

The prosecution presented evidence that appellant engaged in sexual conduct with Russell (born in 1986) in 1995 and 1996, Timothy (born in 1988) from 1997 to 2000, and Cody (born 1999) from 2007 to 2015.

The allegations of sexual misconduct arose shortly after appellant's extended family gathered on March 15, 2015. (RT 5:1182-1183, 1191.) Timothy

10

was there and became concerned about Cody because during the day appellant and Cody went missing for a period of time. (RT 5:1188, 1192.) A few days later, Timothy reported his concerns to Cody's mother, Melissa, which resulted in an interview of Cody. (RT 5:1193-1195, 1199-1200.)

### (2)    Incidents involving Russell (counts 1 and 2).

Russell, born in June 1986, testified that appellant began engaging in sexual conduct with him when he was nine or ten years old (1995 to 1996). (RT 4:1055-1056, 1061.) The conduct began after appellant began dating Russell's mother, and continued for two to three years during the time that his mother dated appellant. (RT 4:1057, 1061, 1080-1083.)

The sexual conduct started with appellant rubbing the outside of Russell's clothes, and then continued to include appellant and Russell masturbating each other and engaging in oral copulation. (RT 4:1063-1065.) Russell testified about a specific incident when appellant touched Russell's penis (count 1). (RT 4:1064-1065.) A few weeks later, appellant orally copulated Russell (count 2). (RT 4:1069-1073.)

### (3)    Incidents involving Timothy (counts 4 through 9).

Timothy, born in 1988, testified that appellant engaged in sexual conduct with him when he was approximately eight years old and continuing until he was 12 to 13. (RT 5:1114, 1122, 1126-1128.) Appellant became a father figure to

11

Timothy in approximately 1997 when Timothy's parents divorced. (RT 5:1115.)
Timothy testified that the sexual conduct started with appellant rubbing his
genitals over the clothes, and then continued to include masturbation and oral
copulation. The sexual conduct occurred at least twice a week, and included
hundreds of times. (RT 5:1126-1130.)

Timothy testified about several specific incidents, including sexual
touching that occurred at the following locations: on the hill near Sand Creek
Road home (count 4); behind a rock near Sand Creek Road home (count 5); in
appellant's bedroom in the Sand Creek Road home (count 6); on the bed in
appellant's bedroom in the Sand Creek Road home (count 7); on the way to the
store on Old Sand Creek Road (count 8); and, while riding a three-wheel on the
hill near the Badger Lane home (count 9). (RT 5:1129-1158, 1160-1163, 1166-
1170, 1219-1220.)

(4)     **Incidents involving Cody (counts 10, 11, 12, 15, and 16).**

Cody, born in 1999, testified that he knew appellant since birth. (RT
4:982-983, 1016.) Appellant began engaging in sexual conduct with him when he
was eight years old (2007) and continuing until March 2015, when he was 15.
(RT 4:988-1030.) Cody testified that appellant would touch him in his private
area. (RT 4:989.) Appellant would remove his penis from his pants and display it
to Cody. (RT 4:990-991.) He also testified that appellant orally copulated him.

12

(RT 4:990-992.) The sexual touching occurred approximately 30 times. (RT 4:992.)

Cody testified about several specific incidents, including sexual touching that occurred at the following locations: while at the shop on Artesia Road (count 10); while riding a quad near Artesia Road (count 11); while in the shop on Artesia Road (count 12); while moving an air mattress in Marysville (count 15); and, while riding a quad near the Badger Lane home (count 16). (RT 4:988-990, 993-994, 997-1006, 1011-1012, 1016-1030, 1049-1050.)

### (5) Appellant's admissions to brother-in-law James Corey.

Appellant's brother-in-law James Corey testified that appellant is married to his sister, Charlene Corey. (RT 4:940-941.) They have no children. (RT 4:941.) His other sister, Ethel, is married to Darrell, whom he knew prior to their marriage. (RT 4:941-942.) Ethel has three children: Melissa, Timothy, and Cheyenne. (RT 4:942.) Melissa's only child is Cody. (RT 4:943.)

Corey testified that he met appellant in 1997. (RT 4:945.) Appellant was a "great guy." (RT 4:946.) They saw each other frequently. (RT 4:947-948.) He noticed nothing unusual. (RT 4:946.)

Corey testified that one day in 2015 he received a call from his sister Ethel, during which Ethel stated that appellant had molested her son and grandson. (RT 4:948.) Corey then met with her sister Charlene. (RT 4:950.)

13

Charlene told him that she spoke with appellant and that appellant first denied that he had molested anyone, but then called her back and told her that "he did it." (RT 4:952.) Appellant called Charlene back, Charlene handed the phone to Corey, and Corey answered it. (RT 4:953.) Corey testified on direct examination about the phone conversation with appellant, as follows:

Q:    And did you talk to someone on the phone?

A:    Yes, ma'am.

Q:    And did you recognize the voice on the other end of the phone?

A:    Yes, ma'am.

Q:    Who was it?

A:    Ken.

Q:    Had you talked to him on the phone previously?

A:    Yes, ma'am.

Q:    How many times?

A:    A lot. Too many to count.

Q:    And what did he say?

A:    I -- I asked, "What's going on, Ken?" You know, and he said that he F'ed up and, um, he goes, "I'm sick," you know, "I molested them boys. I'm sick and I need help."

Q:    Did you ask him any other questions about that?

A:    No. I just basically told him, "Yeah, I think you need help," you know, "that's pretty bad stuff."

14

Q:     At the point that he made these statements to you, did you
        understand when this had occurred or was there any confusion in
        your mind? [RT 4:953-954.]

Corey testified that he did not ask appellant any questions, but appellant

further stated: "I've been doing it for a long time. I'm sick and I need help." (RT

4:954.) Corey told appellant he needed to turn himself in. (RT 4:954.)

Later that same day, Corey and Charlene met with appellant at a park near

Corey's home. (RT 4:959.) Corey testified about the encounter as follows:

Q:     Can you describe what happened at that park?

A:     Um, it was a pretty somber moment, you know, and I was like,
        "Dude," you know, "you screwed up," you know. And he's like, "I
        know, I need help," you know, "I don't know what to do. I need
        help, I'm sick."

Q:     During this time, was it three of you talking?

A:     Cheri [i.e., Charlene] more bawling (sic), you know, um, "Ken,
        what did you do to our lives," and blah, blah, blah. And he's like,
        "I'm sorry, Cheri, I'm sorry I ruined our lives," you know, he was
        apologetic to her. And, um -- yeah.

Q:     Did he say anything else to you in that park?

A:     Um, no, just he needed help and asked me if I knew anywhere to
        get help and if, um -- if he was going to -- how much time I thought
        he was gonna get and blah, blah, blah. [RT 4:959.]

**(6)     Testimony of David Love on Child Sexual Abuse
         Accommodation Syndrome.**

David Love testified as an expert on Child Sexual Abuse Accommodation

Syndrome. He described the syndrome as a pattern of behavior many children

15

exhibit that have been sexually abused. (RT 6:1356-1357.) Children tend to keep
the abuse secret, especially if the abuser is a person with whom they have a
relationship. (RT 6:1360-1365). Children commonly delay reporting of sexual
abuse. (RT 6:1372.) During Love's testimony, the court cautioned the jury that
"expert testimony on any common reactions of child molestation victims is not
admissible to prove that sex crimes actually occurred in this case." (RT 6:1363.)[2]

### B.    The defense case.

Appellant testified in his own defense that he and Charlene West had been
married for twenty years, and he has known her for twenty-one years. (RT
6:1387.) They began living together in 1997. (RT 6:1391.) Appellant held various
positions at several different companies, working in the logging industry,
working for a pharmaceutical company, and working as a maintenance
technician. (RT 6:1393-1396.)

Appellant testified that on his way home from work in March 2015, his
wife called him and said he was being accused of molesting Cody. (RT 6:1400-
1403.) He spoke with her for about 15 minutes and then continued home. (RT
6:1401, 1403-1404.) As he approached home, he saw his wife was driving away

---

[2]    The court gave a cautionary instruction limiting the jury's
consideration of Love's testimony. (CT 251 [CALCRIM No. 1193, Testimony on
Child Sexual Abuse Accommodation Syndrome].) The court also instructed with
CALCRIM Nos. 303 [Limited Purpose Evidence in General] and 332 [Expert
Witness]. (CT 238, 241.)

in the opposite direction. (RT 6:1404-1405.) He arrived home, stayed there for about 90 minutes, and then left to go see his sister-in-law Patty to find out what was happening. (RT 6:1406-1408.) He spoke with his wife the next day when she called and told him that he was suspected of molesting Cody. (RT 6:1410.) Appellant returned home to see his wife. (RT 6:1415.)

Appellant testified that he never met James Corey in the park and did not have a telephone conversation with him about any allegations of molestation. (RT 6:1417-1418.) Appellant testified, in part:

> Q:    Did you hear Mr. Corey say that he saw you in a park?
>
> A:    Yes, I heard him say that.
>
> Q:    Did you see Mr. Corey in a park?
>
> A:    No, I did not.
>
> Q:    Did you hear Mr. Corey say that he had a telephone conversation with you?
>
> A:    Yes, I heard that.
>
> Q:    Did you have a conversation with Mr. Corey?
>
> A:    No, sir, I did not. [RT 6:1417-1418.]

Appellant testified that he never touch Cody in a sexual way, and he never touched Cody in the private parts. (RT 6:1419, 1423.) Appellant testified that he heard Russell's testimony, but he never touched Russell in a sexual manner. (RT 6:1419-1420, 1423.) He also never had any sexual contact with Timothy. (RT

17

6:1420-1421, 1423.) Appellant testified that he had no idea why Timothy would lie about the molestation, except he recalled there was an altercation in March 2015 when the accusations of molestations were first made. (RT 6:1421-1422.)

Dan Cummings testified that he has known appellant since 1996. (RT 5:1283.) Appellant used to help Cummings as Cummings was disabled. (RT 5:1284.) He knew appellant's wife. (RT 5:1287.) Appellant was a devoted husband. (RT 5:1287.) Cummings testified about appellant's good character, as follows:

> Q:    Do you have an opinion of Mr. West's character for honesty?

> A:    I'll tell you what, Ken is one of the most honest guys, respectable guys I have ever met. I mean, it's yes, sir, yes, ma'am, I mean, he's always been that way. And talk about a kind man. I mean, I was having some financial problems back there, he was trying to give me a thousand dollars to help me out. You know, and I wouldn't have took -- I didn't take it, but I mean the gesture was there. And he's -- he's always been a very honorable person, you know. [RT 5:1288-1289.]

Sherry Cummings testified that she is Dan Cummings's wife. She has known appellant since approximately 1998. (RT 5:1296-1297.) Appellant was their neighbor. (RT 5:1298.) She knew appellant to be very honest. (RT 5:1299.)

Shane Gardner testified that he has known appellant for 20 years. (RT 5:1303.) They are good friends and spent a lot of time together. (RT 5:1303-1304.) Gardner testified that appellant has always been truthful and respectful. (RT 5:1304.)

18

Appellant impeached James Corey with evidence that he suffered a prior conviction for attempted murder, and served four years in state prison. (RT 4:944-945.) He was released in 1997. (RT 4:945.)

## Argument

1.    **Appellant's sentence on counts 1 and 2 (15 years-to-life pursuant to the One Strike law) violates the ex post facto clauses of the United States and California Constitutions because it imposes a greater punishment for his offenses than was authorized by law when the offenses were committed, thereby requiring that the sentences thereon be vacated and the case remanded for resentencing.**

The trial testimony and jury instructions permitted the jury to return a verdict on count 1 and 2 based on conduct occurring when Russell (John Doe III) was eight years old, and prior to the effective date of the One Strike law.

The One Strike law (Pen. Code, § 667.61) went into effect on November 30, 1994. (*People v. Alvarez* (2002) 100 Cal.App.4th 1170, 1178.) The indeterminate life terms prescribed by section 667.61 "greatly exceed the determinate sentences previously available for violations of section 288." (*People v. Hiscox* (2006) 136 Cal.App.4th 253, 257.)

"Both the California and United States Constitutions proscribe ex post facto laws. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) The federal and state prohibitions against ex post facto laws apply to any statute that punishes as a crime an act previously committed which was not a crime when done or that inflicts greater punishment than the applicable law when the crime was

19

committed. [Citation.]" (*People v. Alvarez, supra*, 100 Cal.App.4th at p. 1178;

*Weaver v. Graham* (1981) 450 U.S. 24, 30 [the prohibition against ex post facto

laws "forbids the imposition of punishment more severe that the punishment

assigned by law when the act to be punished occurred."]; *People v. Valenti*

(2016) 243 Cal.App.4th 1140, 1173.)

"[I]t is the prosecution's responsibility to prove to the jury that the charged

offenses occurred on or after the effective date of the statute providing for the

defendant's punishment. When the evidence at trial does not establish that fact,

the defendant is entitled to be sentenced under the formerly applicable statutes

even if he raised no objection in the trial court." (*People v. Hiscox, supra*, 136

Cal.App.4th at p. 256.) If the evidence is ambiguous, a reviewing court should

not attempt to second guess the jury's verdict by hypothesizing "what dates might

be attached to certain acts." (*Id.* at p. 261.)

Russell testified he was born on June 29, 1986. (RT 4:1055.) Russell thus

turned eight years old on June 29, 1994 – i.e., *five months before* the effective

date of the One Strike law. Russell's testimony indicated several lewd acts

committed against him, starting when he was about eight years old when his

mother started dating appellant. (RT 4:1057.) Russell testified that the first

incident of sexual touching involved masturbation (count 1), which occurred

when he was "[a]bout nine years old. Eight, nine years old." (RT 4:1063.) The

"second incident" (count 2) occurred "a week or two later" and involved "oral sex." (RT 4:1068-1068.)

Russell testified that the abuse occurred in California during the time his mother and appellant dating, a period of approximately two to three years, after which they left California. (RT 4:1056-1057.) They left California when Russell was about nine or ten years old. (RT 4:1056-1057.) Russell's testimony thus is consistent with the abuse occurring when he was eight years old, and even as young as seven years old. (See also CT 128 [People's Trial Brief: "On April 29, 2015, Russell disclosed to his mother ... , after she heard about the allegations against the Defendant, whom she used to date. Detective O'Neill contacted Russell, 28-years-old at the time of the report, who described *sexual conduct by the defendant beginning when he was approximately seven years old*."], italics added.)

Appellant was charged in count 1 with committing a lewd act upon John Doe III (Russell), a child under the age of 14, during the period January 1, 1995 through December 31, 1996. (CT 80 ["to wit: with hands"].) He was charged in count 2 with committing a lewd act upon John Doe III (Russell), a child under the age of 14, during the period January 1, 1995 through June 28, 1996. (CT 81 ["to wit: with mouth"].)

But the timing of the acts charged in counts 1 and 2 are somewhat uncertain because there were several acts and Russell testified that they occurred when he was eight to nine years old. Moreover, Russell's testimony about when his mother began dating appellant, and then when they left California, is consistent with abuse occurring while he was seven or eights years old. Acts occurring when Russell was seven years old are all prior to the effective date of the One Strike law. Acts occurring when Russell was eight years old – starting from his eighth birthday and continuing to November 29, 1994 (i.e., the day before the effective date of the One Strike law) – also are prior to the effective date of the One Strike law.

The jury was instructed, in part:

> It is alleged that the crimes occurred between January 1, 1995 and March 14, 2015. *The People are not required to prove that the crimes took place exactly within that time frame but only that they happened when the victims were under the age of 14 years old in counts 1-2*, and 4-12, and when the victim was 14 or 15 years of age in counts 15 & 16. [CT 226, italics added.]

Based on the evidence in the record, and consistent with the charges in counts 1 and 2 and the jury instruction quoted above, it is uncertain whether the jury found appellant guilty in counts 1 and 2 based on acts occurring after the effective date of the One Strike law. If the evidence is ambiguous, as here, a reviewing court should not attempt to second guess the jury's verdict by

22

hypothesizing "what dates might be attached to certain acts." (*People v. Hiscox, supra*, 136 Cal.App.4th at p. 261.)

The trial court's application of the One Strike law to the offenses in counts 1 and 2 thus violated the federal and state prohibitions against ex post facto laws. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) The sentence on counts 1 and 2 should be vacated and the case remanded for resentencing.

**2.    The trial court imposed consecutive life sentences on count 2 and counts 4 through 12, inclusive, under the misunderstanding that the One Strike Law mandated full, consecutive sentencing; but the court had the discretion to impose those sentences concurrent to count 1, and thus remand for resentencing is warranted.**

**A.    The trial court retained discretion to impose concurrent one-strike indeterminate terms.**

The trial court imposed a one-strike sentence of 15 years-to-life on count 1, and then imposed consecutive sentences of 15 years-to-life for the remaining Penal Code section 288, subdivision (a) offenses (count 2 and counts 4 through 12) under the One Strike law alternate sentencing scheme. (RT 4:1517-1521.)

The alternate sentencing scheme required sentences of 15 years-to-life because it had been pled and proven that appellant committed offenses enumerated in section 667.61, subdivision (c) "against more than one victim" as set forth in section 667.61, subdivision (e)(4). (See *People v. Anderson* (2009) 47 Cal.4th 92, 102, 107-108.)

23

But subdivision (i) of section 667.61 provides: "For any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), ... the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." Appellant's qualifying offenses–violations of section 288, subdivision (a)–are specified in paragraph (8) of section 667.61, subdivision (c). Thus, by its terms, subdivision (i) of section 667.61 does *not* mandate the imposition of consecutive sentencing for violations of section 288, subdivision (a), leaving the decision to impose consecutive or concurrent terms to the discretion of the trial court under Penal Code section 669. (*People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524 [section 667.61, subdivision (i) mandatory sentences excludes reference to section 288, subdivision (a)]; *People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1263.)

Nor is a violation of section 288, subdivision (a) included in section 667.6, which governs consecutive sentences for other sex crimes. This is not a case involving convictions for *forcible* lewd acts upon a child under section 288, subdivision (b), for which consecutive sentencing is mandated. (Pen. Code, § 667.6, subd. (d).)

Moments prior to imposing sentence, the court and the parties explicitly stated their understanding that consecutive sentences under the One Strike Law alternate sentencing scheme was mandatory. The court stated:

> I'd always worked from the position that it was -- they were 15-to-life terms understanding that many of these cases had gone back to the mid 1990s and understanding ipso facto and how that law works or that concept works and the inability to sentence him any more since he would have the benefit of having the leniency in the law as it were. But thank you. *So, the position by the Probation Department is that this is a 168-year-to-life term with requirements of mandatory consecutive terms* with each of the offenses, but go ahead. [RT 6:1517, italics added.]

The prosecutor then stated her agreement with the probation officer. (RT 6:1517 ["the People agree with that recommendation"].) The court then engaged counsel in the following colloquy:

The Court:    Okay. Anything further at this time then with regards to the recommendation or sentencing from the People?

Ms. Freeman: No.

The Court:    All right. Anything in response?

Mr. Baly:[3]    No. [RT 6:1518.]

Having heard no objection by either the prosecution and/or defense counsel to "the position by the Probation Department is that this is a 168-year-to-life term with requirements of *mandatory consecutive terms*" (RT

---

[3]        Mr. Baly was defense counsel.

25

1517, italics added), the court stated: "The matter stands submitted now to the Court for the pronouncement of judgment." (RT 6:1518.) The court then recounted some of the evidence at trial, and explicitly stated that under "California Rule of Court rule 4.425(b), circumstances in mitigation or aggravation can also be considered in imposing concurrent or consecutive terms." (RT 6:1519.) But neither the court nor the parties ever corrected the misunderstanding that the One Strike law required *mandatory consecutive terms* for each one-strike offense. The court imposed consecutive terms for each one-strike offense and then imposed concurrent terms on counts 15 and 16 – i.e., the section 288, subdivision (c), offenses, which were not subject to one-strike sentencing. (RT 6:1518-1521.)

As explained above, the One Strike Law does not require consecutive terms for each conviction carrying a sentence of 15 years-to-life. "[A]lthough the statutory language of section 667.61, subdivision (b), mandates the imposition of 15 years to life for *each* count involving separate occasions and separate victims, section 667.61 does *not* mandate that those terms must be served consecutively." (*People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262, italics in original, citing *People v. Murphy* (1998) 65 Cal.App.4th 35, 39, 43; see Pen. Code, § 667.61, subd. (g).)

26

Penal Code section 669 sets forth the general rule that sentencing courts have discretion to impose consecutive or concurrent sentences; the presumption in favor of discretion applies "[a]bsent an express statutory provision to the contrary ... ." (*People v. Rodriguez, supra*, 130 Cal.App.4th at p. 1262.) The trial court thus had discretion to order the terms to run consecutively or concurrently. (*Ibid.*; see also Pen. Code, § 669 [prison sentences may be consecutive or concurrent unless prohibited by another statute].)

The trial court thus retained discretion to impose either consecutive or concurrent one-strike indeterminate terms on count 2 and counts 4 through 12. (See *People v. Rodriguez, supra*, 130 Cal.App.4th at pp. 1262-1263.)

### B. Remand for resentencing is warranted because the trial court imposed sentence without an accurate understanding of its discretion.

Although the trial court had discretion to select consecutive or concurrent sentences, "[a]n erroneous understanding by the trial court of its discretionary power is not a true exercise of discretion." (*People v. Bruce G.* (2002) 97 Cal.App.4th 1233, 1247.)

"Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8; see *United States v. Tucker* (1972) 404 U.S. 443, 447; *Townsend v. Burke* (1948) 334 U.S. 736, 741.)

27

"A court cannot exercise that 'informed discretion' where it is unaware of the scope of its discretionary powers." (*People v. Bruce G., supra,* 97 Cal.App.4th at pp. 1247-1248.) When a trial court appears to have imposed a sentence without an accurate understanding of its discretion, remand for resentencing is appropriate. (*Ibid.*)

Penal Code section 669 "grants the trial court broad discretion to impose consecutive sentences when a person is convicted of two or more crimes." (*People v. Shaw* (2004) 122 Cal.App.4th 453, 458.) "The sentencing rules specify several criteria to guide the trial court's determination whether to impose consecutive or concurrent terms." (*Ibid.*)

At the sentencing hearing the court must determine whether a defendant convicted of multiple offenses shall serve consecutive or concurrent terms. (Pen. Code, § 669; Cal. Rules of Court, rule 4.433(c)(3); see rule 4.425 [factors court considers].) The trial court has discretion to determine whether several sentences shall run concurrently or consecutively. (Pen. Code, § 669; *People v. Bradford* (1976) 17 Cal.3d 8, 20.) The court's decision to impose consecutive sentences is a sentence choice. (See rule 4.405(f); *People v. Anjell* (1979) 100 Cal.App.3d 189, 203-204, disapproved on other grounds in *People v. Mason* (1991) 52 Cal.3d 909, 943.) The court must state reasons for this decision. (Pen. Code, § 1170,

28

subd. (c); Cal. Rules of Court, rule 4.406 [court must state reasons for imposing a consecutive sentence].)

Here, the explicit statement from the court that the One Strike Law alternate sentencing scheme mandated consecutive sentences – together with agreement by the parties that mandatory consecutive sentences were required – supports a finding on this record that the court did not understand it had authority to impose concurrent sentences on count 2 and counts 4 through 12. (RT 6:1517 ["So, the position by the Probation Department is that this is a 168-year-to-life term with requirements of mandatory consecutive terms with each of the offenses"].)

In *People v. Murphy, supra,* 65 Cal.App.4th 35, a case involving application of the One Strike Law, the appellate court held that the trial court erred in staying imposition of one-strike sentencing on count III (involving victim Carma L.). The court remanded the case with directions to sentence defendant to a term of 15-years-to-life on count III "and to exercise its discretion whether the sentences on counts II [involving victim Kristy R.] and III should run consecutively or concurrently." (*Id.* at p. 39.)

A trial court must act with an understanding of its sentencing discretion. (*People v. Fuhrman* (1997) 16 Cal.4th 930, 944 [discretion to strike prior conviction allegations]; *People v. Belmontes, supra,* 34 Cal.3d 335, 348, fn. 8

29

[discretion to impose a full term consecutive sentence under Pen. Code, § 667.6, subd. (c)].) "[W]here the record *affirmatively* discloses that the trial court misunderstood the scope of its discretion," remand for resentencing is proper. (*People v. Fuhrman, supra*, 16 Cal.4th at p. 944; see *People v. Meloney* (2003) 30 Cal.4th 1145, 1165 [remanding for resentencing where trial court mistakenly believed it lacked discretion to impose lesser sentence]; *People v. Sotomayor* (1996) 47 Cal.App.4th 382, 391 ["sentencing record as a whole" indicated the trial court "was unaware of his sentencing discretion"].)

A new sentencing hearing also is required by the federal Constitution. A new sentencing hearing is the only adequate form of relief when a judge pronounces sentence while ignorant of his or her sentencing discretion because anything else would deprive appellant of the right to offer, in person and with the assistance of counsel, arguments supporting a favorable exercise of discretion. "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court" (*People v. Belmontes, supra*, 34 Cal.3d at p. 348, fn. 8) and to be personally present with counsel during all critical phases of the prosecution, including sentencing. (U.S. Const., 6th & 14th Amends.; *Mempa v. Rhay* (1967) 389 U.S. 128, 134-137; Cal. Const., art. I, § 15; *In re Perez* (1966) 65 Cal.2d 224, 228-230; see also Pen. Code, § 1193).

**C.     If the issue has been forfeited by the failure of trial defense counsel to object to consecutive terms, then the Court should exercise its discretion to address the issue in the first instance; alternatively, appellant received ineffective assistance of trial defense counsel.**

Appellant recognizes that "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" are subject to forfeiture unless an objection is made in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 353.)

Trial defense counsel did not object, and thereby noted implicit acceptance of the court's statement indicating that the One Strike law required *mandatory consecutive terms* for each one-strike offense. (RT 6:1518.) Moreover, defense counsel failed to argue for consecutive terms as to any of the offenses of convictions. (See RT 6:1518-1521.) The record thus affirmatively shows that defense counsel erroneously understood that consecutive sentences were mandatory. (RT 6:1518.)

Moreover, the record of the trial court's pronouncement of sentence does *not* indicate whether the court would have imposed concurrent terms on count 2 and counts 4 through 12 (or on any one of them), if the court had an accurate understanding of its discretionary power. (See RT 6:1515-1522.)

Appellant urges the Court to address the issue to forestall a claim of ineffective assistance of counsel[4] because there can be no tactical justification for failure to object to a trial court's misunderstanding of sentencing discretion when the mistake is adverse to the defendant. (*People v. Lewis* (1990) 50 Cal.3d 262, 282 [considering claim of prosecutorial misconduct not objected to in trial court to forestall claim of ineffective assistance of counsel]; see also *People v. Jones* (2007) 157 Cal.App.4th 1373, 1383 [defendant entitled to sentencing decision based on trial court's properly "'informed discretion'"]; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530, fn. 13 [remand appropriate when record shows trial court misunderstood scope of its discretion].)

Both the Sixth Amendment to the United States Constitution and Article I, Section 15 of the California Constitution guarantee a criminal defendant effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 684-685; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)

To establish ineffective assistance of counsel, appellant must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness and (2) but for counsel's errors there is a "reasonable probability" that the result of the proceeding would have been different. (*Strickland v.*

---

[4]    See *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].)

32

*Washington, supra*, 466 U.S. at pp. 688, 693.) "Reasonable probability" does not require defendants to show that "counsel's conduct more likely than not altered the outcome in the case." (*Id.* at p. 693.) Instead, reasonable probability is merely "a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

A criminal defense attorney has the duty to raise and litigate all viable issues at trial, including constitutional issues. (See *Kimmelman v. Morrison* (1986) 477 U.S. 365, 375 [failure to litigate a Fourth Amendment issue is ineffective assistance of counsel]; *Huynh v. King* (11th Cir. 1996) 95 F.3d 1052, 1057, cert. denied, 121 S.Ct. 50 (2000) [guilt phase issue, remanded for evidentiary hearing – failure to file a timely suppression motion].)

For the reasons outlined herein, trial defense counsel's erroneous understanding that the court lacked discretionary authority to sentence concurrently, and counsel's failure to argue for imposition of concurrent terms, rendered his representation ineffective because there is a reasonable probability that his sentence would have been more favorable if counsel had raised the objection. (See *Strickland v. Washington, supra*, 466 U.S. at pp. 691-694, 697.)

In *People v. Deloza* (1998) 18 Cal.4th 585, for example, the trial court imposed consecutive sentences for defendant's robbery convictions. (Id. at p. 599.) Although the trial court recognized the scope of its discretion to strike a prior serious felony conviction, the court misunderstood the scope of its

33

discretion to impose concurrent sentences and erroneously believed consecutive sentences were mandatory. (*Id.* at pp. 599-600.) Our California Supreme Court remanded the matter to the trial court for resentencing. (*Id.* at p. 600.) In this case, as in *Deloza*, the trial court misunderstood the scope of its discretion to impose concurrent sentences and imposed consecutive sentences, erroneously believing that the law mandated consecutive sentences.

Moreover, even where there are multiple victims, as here, the court retains discretion to sentence concurrently. (*People v. Rodriguez, supra*, 130 Cal.App.4th at pp. 1260-1261.)

The record suggests the trial court did not recognize the full extent of its sentencing discretion, and thus this Court should remand so that it may exercise that discretion. (See *People v. Downey* (2000) 82 Cal.App.4th 899, 912 ["Where, as here, a sentence choice is based on an erroneous understanding of the law, the matter must be remanded for an informed determination."].)

Appellant's sentence thus should be vacated and the case remanded for resentencing. (See *People v. Navarro* (2007) 40 Cal.4th 668, 681 [where resentencing is required for some counts "remand for a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances"].)

## Conclusion

For the foregoing reasons, appellant's sentence should be vacated and the

case remanded for full resentencing as to all counts.

Respectfully submitted,

/s/Stephen M. Lathrop
Stephen M. Lathrop

Attorney for Defendant/Appellant
Kenneth James West

## Certificate of Compliance

I certify that this brief contains 7,080 words.

/s/Stephen M. Lathrop
Stephen M. Lathrop

35

## Proof of Service

I, Stephen M. Lathrop, declare, that I am over the age of 18 years, not a party to the case, and am a member of the California State Bar. My business address is 904 Silver Spur Road #430, Rolling Hills Estates, CA 90274. My electronic service address is lathrop126813@gmail.com. I am familiar with the business practice for collecting and processing electronic and physical correspondence.

On April 15, 2019, I mailed or electronically served a copy of **Appellant Kenneth James West's Opening Brief** by (1) mailing a copy thereof to the physical addresses set forth below and (2) electronically serving a copy thereof to the e-mail addresses set forth below, as follows:

| | |
|---|---|
| Deputy D.A. Amythest Freeman<br>2220 Tulare Street, Suite 1000<br>Fresno, CA 93721 | Superior Court of California<br>County of Fresno<br>Attn: Hon. Don D. Penner<br>1100 Van Ness Avenue, Room 401<br>Fresno, California 93724-0002 |
| Scott Damian Baly<br>via email: sbaly@sbcglobal.net<br>(trial defense counsel) | Kenneth James West (# BH0941)<br>Centinela State Prison<br>P.O. Box 931<br>Imperial, CA 92251 |

I am a resident of or employed in the county where the mailing occurred. The document was served from Rolling Hills Estates, California. I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 15, 2019, at Rolling Hills Estates, California.

/s/ Stephen M. Lathrop
    Declarant

HC-001

Name: _Kenneth J. West_

Address: _Valley State Prison_
_PO Box 96_
_Chowchilla, CA._
_93610_

CDC or ID Number: _BH0941_

_Superior Court of California_
_County of Fresno · Central Division_
_1100 Van Ness Ave, Fresno, CA._
_93724-1801_
(Court)

_Kenneth J. West_
Petitioner

vs.

_Attorney General · California_
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. _____

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original of the petition and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2018). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page 1 of 6

Form Approved for Optional Use
Judicial Council of California
HC-001 [Rev. January 1, 2019]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courts.ca.gov

HC-001

**This petition concerns:**

- [X] A conviction
- [X] A sentence
- [ ] Jail or prison conditions
- [X] Other (specify): EXHAUSTION OF STATE REMEDIES

- [ ] Parole
- [ ] Credits
- [ ] Prison discipline

1. Your name: KENNETH JAMES WEST

2. Where are you incarcerated? VALLEY STATE PRISON

3. Why are you in custody? [X] Criminal conviction  [ ] Civil commitment

*Answer items a through i to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

288(A) COUNTS 1, 2, 4-13    COUNTS 1 & 2 ON CV3
288(C) COUNTS 14 & 16       COUNTS 4-9 ON CV2
= 13 COUNTS TOTAL           COUNTS 10-12 & 14-16 ON CV1

b. Penal or other code sections: _____

c. Name and location of sentencing or committing court:
SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO
1100 VAN NESS AVE. FRESNO, CA. 93724

d. Case number: F15904838

e. Date convicted or committed: 5.21-2018

f. Date sentenced: 8.6.2018

g. Length of sentence: 165 to LIFE

h. When do you expect to be released? THIS IS A DEATH SENTENCE

i. Were you represented by counsel in the trial court? [X] Yes  [ ] No  *If yes, state the attorney's name and address:*
SCOTT BAILEY

4. What was the LAST plea you entered? *(Check one):*

- [X] Not guilty  [ ] Guilty  [ ] Nolo contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

- [X] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

HC-001

6. **GROUNDS FOR RELIEF**
**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

- TRIAL COUNSEL WAS DEFICIENT & PREJUDICED TOWARDS CASE, EFFECTIVE ABANDONMEN
- COUNSEL FAILED TO PROPERLY OBJECT TO STATUE OF LIMITATIONS
- COUNSEL DID NOT PRESENT EXPERT WITNESS TESTIMONY THAT WOULD HAVE RAISED A REASONABLE DOUBT, OR WITNESS ACCOUNTS THAT WOULD HAVE PRESENTED ALIBI INFO • COUNSEL MADE PREJUDICIAL COMMENTS •
- COUNSEL DID NOT CROSS EXAMINE WITNESSES OR RECALL WITNESS TO DEMONSTRATE ANOTHER WITNESS PERJURED • COUNSEL DID NOT INFORM DISCOVERY STATEMENT #1 ATTACHED

a. **Supporting facts:**
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).*

1. STATEMENT # 1 & 2 ATTACHED
2. STATEMENT # 3 ATTACHED "CHERIE WEST"
3. PREVIOUSLY FILED PETITION ATTACHED.

THESE STATEMENTS ASSERT THAT PETITIONER WAS DENIED OF EFFECTIVE TRIAL COUNSEL, FORCED TO TRIAL W/ HOSTILE COUNSLER, UNCONSTITUTIONALLY BROUGHT TO TRIAL & SENTENCED IN A VIOLATION OF PETITIONERS 5TH, 6TH & 8TH AMENDMENTS RIGHTS. THE ATTORNEY WAS DEFICIENT, HOSTILE TO PETITIONERS CASE & EFFECTIVELY ABANDONED PETITIONERS DEFENSE.

b. **Supporting documents:**
Attach declarations, relevant records, transcripts, or other documents supporting your claim. (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474.)

c. **Supporting cases, rules, or other authority** *(optional):*
(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

STATEMENT # 1/2 ATTACHED
5TH, 6TH, 8TH AMENDMENT CLAIMS

HC-001

7. **Ground 2 or Ground _____** *(if applicable):*

ABUSE OF JUDICIAL DISCRETION.
- JUDGE PERMITTED CASE BE BROUGHT PAST STATUE OF LIMITATIONS
- JUDGE REFUSED TO GRANT NEW ATTORNEY DESPITE MULTIBLE MARSDEN COMPLAINTS
- JUDGE IMPOSED EXCESSIVE "DEATH" STYLE SENTENCE
— THESE ACTS CONSTITUTE A VIOLATION OF FEDERAL CIVIL RIGHTS & IMPOSE AN ILLEGAL SETENCES.

a. Supporting facts:

ATTACHMENT # 1/2

THE AFOREMENTIONED STATEMENTS & INFORMATION PROVIDED ON PAGE 3 THE RECORD WHICH SHOWS THE FOLLOWING: →
1. RUSHING THE TRIAL TO GO ON VACATION. TRIAL IS NOT A "RUSH" JOB
2. REFUSING TO ASSIGN NEW COUNCEL DESPITE AMPLETIME & OBVIOUS ISSUES.
3. EXTREMELY EXCESSIVE "LWOP" STYLE SETENCE

b. Supporting documents:

c. Supporting cases, rules, or other authority:

ATTACHMENT # 2

HC-001

8. Did you appeal from the conviction, sentence, or commitment? ☒ Yes ☐ No    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Division of Superior Court"):
COURT OF APPEAL, FIFTH APPELLATE DISTRICT

b. Result: DISMISS W/O PREJUDICE    c. Date of decision: _____

d. Case number or citation of opinion, if known: F077999

e. Issues raised: (1) INEFFECTIVE ASSISTANCE OF TRIAL COUNCIL

(2) GROSS SENTENCING

(3) STATUE OF LIMITATIONS

f. Were you represented by counsel on appeal? ☒ Yes ☐ No    If yes, state the attorney's name and address, if known:
STEPEN LATHROP

9. Did you seek review in the California Supreme Court? ☒ Yes ☐ No    If yes, give the following information:

a. Result: DENIED REVIEW    b. Date of decision: 2-24-2031

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal (see *In re Dixon* (1953) 41 Cal.2d 756, 759):
ATTORNEY REFUSED TO CONSIDER ISSUES THAT PETITIONER FELT WAS RELEVANT. ACTED AGAINST INTEREST

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Dexter* (1979) 25 Cal.3d 921, 925.) Explain what administrative review you sought or explain why you did not seek such review:
PETITIONER ATTEMPTED TO BRING CLAIMS TO FEDERAL COURT & WAS DIRECTED TO EXHAUST STATE ISSUES BY THE HIGHER COURT. PETITIONER IS NOW COMPLYING WITH THAT ORDER.

b. Did you seek the highest level of administrative review available? ☒ Yes ☐ No
*Attach documents that show you have exhausted your administrative remedies. (See* People v. Duvall *(1995) 9 Cal.4th 464, 474.)*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court, including this court? (See *In re Clark* (1993) 5 Cal.4th 750, 767–769 and *In re Miller* (1941) 17 Cal.2d 734, 735.)
☒ Yes    If yes, continue with number 13.    ☐ No    If no, skip to number 15.

HC-001

13 a. (1) Name of court: U.S. DISTRICT COURT (1:22-CV-00172-ADA-CDB (HC)

(2) Nature of proceeding (for example, "habeas corpus petition"): HABEAS CORPUS PETITION

(3) Issues raised: (a) INEFFECTIVE ASSISTANCE OF COUNSEL "FAILURE TO OBJECT"

(b) GROSS/UNFAIR SENTENCE & EQUAL PROTECTION

(4) Result (attach order or explain why unavailable): TOLD TO EXHAUST STATE REMEDIES ON CLAIMS

(5) Date of decision: 3.7.2023

b. (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised: (a) _____

(b) _____

(4) Result (attach order or explain why unavailable): _____

(5) Date of decision: _____

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____
_____
_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Robbins (1998) 18 Cal.4th 770, 780.)

PETITIONER IS LAY PERSON WHO HAS REQUESTED COUNSEL MULTIPLE TIMES TO NO AVAIL. COURT HAS NOT AIDED PETITIONER, ISSUES ARE EXTREMELY COMPLEX.

16. Are you presently represented by counsel? ☐ Yes ☒ No    If yes, state the attorney's name and address, if known:

PETITION IS FILED WITH ASSISTANCE OF OTHER IMATE. PETITIONER IS SEEKING APPOINTMENT OF COUNCEL.

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes ☒ No    If yes, explain:

PETITIONER HAS REQUESTED A STAY AT FEDERAL LEVEL TO EXHAUST STATE ISSUES AS ORDERED BY COURT.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

N/A

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 3/26/23

_____
(SIGNATURE OF PETITIONER)

HC-001 [Rev. January 1, 2019]    **PETITION FOR WRIT OF HABEAS CORPUS**    Page 6 of 6

FILED

JUN 02 2023

FRESNO COUNTY SUPERIOR COURT
By_____
                              DEPUTY

1

2

3

4

5              SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

6                             CENTRAL DIVISION

7

8   In re Kenneth James West,        )   No. 23CRWR686980
                                      )
9              Petitioner,            )   Dept. 70
                                      )
10                                    )
                                      )   ORDER DENYING PETITION FOR
11  On Habeas Corpus.                 )   WRIT OF HABEAS CORPUS
    _____)
12          Having read and considered the petition for writ of habeas

13  corpus, filed on March 29, 2023[1], the court finds that petitioner

14  has failed to state a prima facie case for relief.

15          Petitioner raises six contentions in his petition regarding

16  Superior Court of California, County of Fresno case number

17  F15904838.

18          Initially, on June 9, 2017, petitioner was charged by

19  information with 13 counts of violating Penal Code section 288,

20  subdivision (a) and three counts of violating Penal Code section

21  288, subdivision (c)(1).[2]  Additionally, the information alleged

22  that, with regard to all counts, the petitioner fell under the

23  alternative, and more severe, punishment scheme set for in Penal

24  Code section 667.61 because petitioner had multiple victims.

25

26  _____

27  [1] On May 26, 2023, the court granted its own *sua sponte* motion and extended its
    time to rule on the instant habeas corpus petition.

28  [2] The felony complaint in Superior Court of California, County of Fresno case
    number F15904838 was filed on August 5, 2015.

COUNTY OF FRESNO
Fresno, CA

On May 21, 2018, petitioner was found guilty as to counts 1, 2, and 4 through 12 for the crime of committing a lewd act upon three separate victims under the age of 14 (Pen. Code, § 288, subd. (a)), and counts 15 and 16 for the crime of committing a lewd act upon a child when the defendant was at least 10 years older than the child (Pen. Code, § 288, subd. (c)(1)). Additionally, the jury found true the Penal Code section 803, subdivision (f) allegation regarding the exception to the statute of limitations as to counts 1, 2, and 4 through 9 and also found true the allegation that petitioner fell under Penal Code section 667.61 as to counts 1, 2, and 4 through 12.

In this petition, petitioner contends that the judgment rendered against him is illegal since his charges were filed after the statute of limitations had expired. However, in determining the maximum sentence for a violation of a statute, the court must take into account any alternative sentencing schemes for a violation of the statute that the prosecution has charged. Penal Code section 667.61 is an alternate penalty scheme that, when charged, defines the length of imprisonment for the substantive offense of violating Penal Code section 288, subdivision (a). (See *People v. Perez* (2010) 182 Cal. App. 4th 231, 239.)

The former Penal Code section 667.61 provided that a person who was convicted "in the present case or cases" for violations of Penal Code section 288, subdivision (a) against more than one victim "shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years." (Former Penal Code, § 667.61, subds. (b), (c)(7), and (e)(5) [Added by Stats.1993-94, 1st Ex.Sess., c. 14 (S.B.26), § 1,

1  eff. Nov. 30, 1994].)  As petitioner was charged with counts 1, 2,

2  and 9 through 12 for violating Penal Code section 288, subdivision

3  (a), the counts dealt with three different victims, and the

4  prosecution alleged that Penal Code section 667.61 applied to all

5  counts, the court finds that counts 1, 2, and 4 through 12 were

6  subject to the alternative sentencing scheme created in Penal Code

7  section 667.61.  Therefore, while violations of Penal Code section

8  288, subdivision (a) are generally subject to a maximum 8-year

9  prison term, in this case, since counts 1, 2, and 4 through 12

10  were subject to the alternative sentencing scheme created in Penal

11  Code section 667.61, subd. (b), the maximum sentence that could

12  have been imposed for counts 1, 2, and 4 through 12 was a 15-year-

13  to-life prison term.  (Former Penal Code, § 667.61, subds. (b),

14  (c)(7), and (e)(5) [Added by Stats.1993-94, 1st Ex.Sess., c. 14

15  (S.B.26), § 1, eff. Nov. 30, 1994].)

16      Penal Code § 805(a) provides that, for the purpose of

17  determining the applicable statute of limitations, "[a]n offense

18  is deemed punishable by the maximum punishment prescribed by

19  statute for the offense, regardless of the punishment actually

20  sought or imposed."  Consequently, pursuant to Penal Code section

21  805, subdivision (a), Penal Code section 799 actually sets out the

22  statute of limitations applicable to counts 1, 2, and 4 through

23  12: "Prosecution for an offense punishable by death or by

24  imprisonment in the state prison for life … may be commenced at

25  any time."

26      Accordingly, under the terms of Penal Code section 799, the

27  prosecution of counts 1, 2, and 4 through 12 "may be commenced at

28  any time."  Hence, when the prosecution of counts 1, 2, and 4

COUNTY OF FRESNO
Fresno, CA

In re Kenneth West - Case No. 23CRWR686980 - Order

-3-

1    through 12 commenced on August 15, 2015, those counts were not

2    barred by the applicable statute of limitations.  Moreover, this

3    court notes that counts 15 and 16 were not time-barred when the

4    felony complaint was filed.  Consequently, petitioner's first

5    claim fails to state a prima facie case for relief.

6        Second, petitioner contends that he received ineffective

7    assistance of counsel when his trial attorney failed to call

8    various witnesses and/or cross-examine witnesses.  Third,

9    petitioner alleges that his trial attorney made prejudicial

10   comments, failed to inform petitioner of the discovery, and became

11   "extremely rude and abusive" to petitioner.  Fourth, petitioner

12   claims that his trial attorney rendered ineffective assistance of

13   counsel because he failed to object to the statute of limitations.

14       Initially, the court notes that petitioner has filed a prior

15   petition for writ of habeas corpus with this court raising the

16   identical claim regarding his second contention that his trial

17   attorney failed to call various witnesses and/or cross-examine

18   witnesses.  (See *In re Kenneth West* (No. 18CRWR684352).)  Here,

19   this court has already considered the merit of petitioner's second

20   claim and found that he failed to state a prima facie case for

21   relief.

22       The *Miller* rule states that "a petition for habeas corpus

23   based on the same grounds as those of a previously denied petition

24   will itself be denied where there has been no change in the facts

25   or law substantially affecting the rights of the petitioner.' "

26   (*In re Reno* (2012) 55 Cal.4th 428, 496-497.)  Further, in

27   California, " 'a defendant is not permitted to try out his

28   contentions piecemeal by successive proceedings attacking the

1  validity of the judgment against him.' " (*In re Clark* (1993) 5

2  Cal.4th 750, 768.)  Therefore, the *Clark/Horowitz* rule bars "newly

3  presented grounds for relief which were known to the petitioner at

4  the time of a prior collateral attack on the judgment." (*Ibid.*)

5      In this case, to the extent that petitioner's second, third

6  and/or fourth claims were previously unsuccessfully raised in

7  petitioner's prior petition for writ of habeas corpus, he has not

8  established that his second, third, and/or fourth claims are based

9  on newly discovered evidence or that the law applicable to his

10  claims has changed since he last presented his claims to this

11  court.  (*Reno, supra,* 55 Cal.4th 428, 496-497.)  Further,

12  petitioner has not adequately explained why he failed to raise his

13  second, third and/or fourth claims in his prior habeas corpus

14  petition.  (*Id.* at pp. 501-502.)  Therefore, petitioner's second,

15  third and/or fourth claims are barred pursuant to either the

16  *Miller* rule or the *Clark/Horowitz* rule unless each of the claims

17  falls within one or more of the four narrow *Clark* exceptions to

18  the procedural bars.  However, since petitioner has failed to

19  demonstrate that his second, third and/or fourth claims fall under

20  any of the *Clark* exceptions, petitioner's three claims are barred

21  pursuant to either the *Miller* rule or the *Clark/Horowitz* rule.

22  Consequently, petitioner's second, third and fourth claims each

23  fail to state a prima facie case for habeas corpus relief

24      Fifth, petitioner contends that the trial court abused its

25  judicial discretion by denying his *Marsden* motions.  However, a

26  petition for habeas corpus will be dismissed if it alleges an

27  issue that could have been raised on direct appeal but was not.

28  (*In re Dixon* (1953) 41 Cal.2d 756, 759.)  In case number

1   F15904838, the trial court denied the *Marsden* motions on December
2   8, 2016 and August 6, 2018. Although petitioner filed a timely
3   appeal, he did not raise the issue of the trial court's ruling on
4   any of the *Marsden* motions. Subsequently, the opinion was filed
5   in 2020 and the remitter was issued in 2021. Thus, petitioner's
6   judgment is final. (*Dixon, supra*, 41 Cal.2d at 759.) Furthermore,
7   petitioner has not established that his claim is based on newly
8   discovered evidence or that the law applicable to his claim has
9   changed since he last presented his claim to this court. (*In re*
10  *Reno* (2012) 55 Cal.4th 428, 496-497.) Additionally, petitioner's
11  claim fails to fall within one or more of the four narrow *Clark*
12  exceptions to the *Dixon* bar. (*Reno, supra*, 55 Cal.4th 428, 473-
13  474.) Therefore, petitioner's fifth claim fails to state a prima
14  facie case for habeas corpus relief.

15       Lastly, petitioner contends that the trial court imposed a
16  "death style sentence" that is cruel and unusual. However,
17  petitioner has failed to allege any facts establishing that his
18  sentence is illegal. Additionally, petitioner has failed to
19  allege any factual basis establishing that his sentence is grossly
20  disproportionate. (*Ewing v. California* (2003) 538 U.S. 11, 20, 23
21  [The Eighth Amendment proportionality guarantee "does not require
22  strict proportionality between crime and sentence," but prohibits
23  "extreme sentences that are 'grossly disproportionate' to the
24  crime."].) Therefore, because petitioner has not provided a
25  reasonable explanation as to the factual basis underlying his
26  claim, petitioner's last claim is conclusory. (*In re Reno* (2012)
27  55 Cal.4th 428, 493 ["[C]onclusory allegations without specific
28  factual allegations do not warrant relief."]; *People v. Karis*

1   (1988) 46 Cal.3d 612, 656 ["Conclusory allegations made without
2   any explanation of the basis for the allegations do not warrant
3   relief, let alone an evidentiary hearing."].)   Consequently,
4   petitioner's last claim fails to state a prima facie case for
5   habeas corpus relief.
6       Accordingly, the petition for writ of habeas corpus is
7   denied.
8   DATED _____ 2023

10
11  Gary R. Orozco
    Judge of the Superior Court
12

13

14  The foregoing instrument is a correct
    copy of the original on file in this
15  office.

    ATTEST:    JUN 0 5 2023
16
                        Superior Court Clerk
    State of California, County of Fresno
17  By _____
                                    DEPUTY
18

19

20

21

22

23

24

25

26

27

28

**Witness Interview**

| | | | | |
|---|---|---|---|---|
| **Witness** | Collins, Molly   01/30/1958 | **Client** | West, Kenneth | |
| **Interviewed By** | Gonzalez, Edith | **PD/APD#** | 16AD03087 | |
| **Current Address** | | **Court#** | F15904838 | **9/11/2021** |
| | | **Attorney** | Baly, Scott | **Page 1 of 1** |

**Narrative**

I contacted Molly Jean Collins, DOB: 01/30/58 via telephone at ▓▓▓▓▓▓ at approximately 12 p.m. on June 21, 2016. I verbally identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I asked Molly if she would be willing to give me a statement. She agreed and stated as follows:

Molly has known Kenneth West for about thirty-five years. Molly considered Kenneth a good friend. Kenneth also worked for Molly's ex-husband, Dave Cummings in the past.

Molly described Kenneth as a good worker and as far as she knew, he was a fantastic person. Everything she heard and knew about Kenneth was positive.

The only interaction Molly had around Kenneth was when they were around adults. However, Molly believed the accusations against Kenneth were "a bunch of bull-crap." Kenneth had always been attracted to women and he was a respectful person. She stated that Kenneth was never "in that direction with kids." Molly stated that was about all she could say about Kenneth, so I concluded my interview.

E. Gonzalez

| Witness | Gardner, Shawn    07/15/1959 | | Client | West, Kenneth |
| Interviewed By | Gonzalez, Edith | | PD/APD# | 16AD03087 |
| Current Address | ▮▮▮▮▮▮▮▮ | | Court# | F15904838 |
| | | | Attorney | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

---

I met with Shawn Dougles Gardner, DOB: 07/15/59 at ▮▮▮▮▮▮▮ Squaw Valley at approximately 9:16 a.m. on March 16, 2016. I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I showed Shawn my county issued identification badge and gave him my business card. I asked Shawn if he would be willing to give me a statement. He agreed and stated as follows:

Shawn has known Kenneth West for over thirty years. Shawn "firmly doubts" the allegations against Kenneth. Shawn trusts Kenneth.

Shawn never met the boys that accused Kenneth, but Shawn had been around Kenneth long enough to know Kenneth was not like that. Throughout the years, Shawn and Kenneth hunted, fished, boated and drank together. They went camping at least twenty times and they stayed alone in a tent at times. Kenneth never showed any inappropriate behavior toward anyone.

Furthermore, Kenneth had been around Squaw Valley for many years and Shawn had never heard anything bad about Kenneth in the community. Shawn described Kenneth as the type of person who was "a giver more than a taker."


E. Gonzalez

**Witness Interview**

| Witness | Carrieo, Patty  04/05/1951 | | Client | West, Kenneth |
|---|---|---|---|---|
| Interviewed By | Fung, Randy | | PD/APD# | 16AD03087 |
| Current Address | ████████████ | | Court# | F15904838 |
| | | | Attorney | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

I was contacted by GEORGE MONTOYA who said that his girlfriend, PATTI CARRIEO, who is deaf, wanted to give a statement. She said that the government provides special videophones which link with an interpreter who they can see and the interpreter will interpret for the deaf person in real time.

I received a call from Interpreter #931 of the Sorenson Interpreting Services (www.sorenson.com/interpreting) who said that he had PATTI CARREO on the line and would be interpreting for her. I identified myself as an investigator with the Fresno County Public Defender in California and informed her that my office represents KENNETH WATSON in this matter.

CARRIEO gave her date of birth as 04/05/51. She said that she is the wife of GEORGE MONTOYA and that KENNETH WATSON is her brother-in-law.

I asked CARRIEO if she recalled TIMMY DURHAM visiting his grandmother JEAN COREY in Nevada before she passed. CARRIEO said that COREY moved in with them in Nevada after her recovery from cancer in 1994 or 1995 and after she was re-diagnosed with cancer in 2001, they moved her to KEN and SHERRI WEST's home in California. CARRIEO said that TIMMY DURHAM did not visit his grandmother during her time in Nevada. She said that the only relatives that came to visit were her sister ETHEL and her two daughters.

Submitted 03/06/18
Randy Fung
Defense Investigator

**Witness Interview**

| | | | | |
|---|---|---|---|---|
| **Witness** | Benton, Brian    04/30/1965 | | **Client** | West, Kenneth |
| **Interviewed By** | Gonzalez, Edith | | **PD/APD#** | 16AD03087 |
| **Current Address** | | | **Court#** | F15904838 |
| | | | **Attorney** | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

I met with Brian Benton, DOB: 04/30/65 at ███████████████████████ at approximately 11:25 a.m. on June 21, 2016. I showed Brian my county issued identification badge and gave him my business card. I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I asked Brian if he would be willing to give me a statement. He agreed and stated as follows:

Brian has known Kenneth for about nine years. Brian and Kenneth were neighbors for several years in Squaw Valley, CA.

Brian described Kenneth as a hardworking man. Brian stated he had nothing bad to say about Kenneth. Brain stated he had never heard anything negative about Kenneth in the community and he could "guarantee" Kenneth was a good man.

Brian felt sorry for Kenneth because he was accused of molesting "Cody." Brian knew Kenneth would never do anything like that. Brian is certain Melissa Durham is making up stories. It would not be the first time Melissa would invent something like that. Melissa accused Will Swepston and Brian's son, Ryan Benton of rape in the past.

When Brian heard about Kenneth, he thought, "Here she goes again" (referring to Melissa). He stated that Melissa, Timothy and Cody were "nothing but trouble and do people dirty." Brian added that Melissa lived directly across the street from his house and if someone investigated what went on at Melissa's residence, they would find out all the bad things that went on at that house, including drug sales and welfare fraud. Brian stated that Melissa was an awful person and not a good human being.

Brian added that he had known Timothy since Timothy was a child. He described Timothy as gullible who went along with whatever his mother, Melissa said.

Lastly, Brain stated he had sole custody of his six year-old niece, and Brian would trust Kenneth one hundred percent with her because there was no doubt in his mind that Kenneth was innocent.



| Witness | White, Shaun | 03/24/1979 | | Interviewed By | Gonzalez, Edith |
|---|---|---|---|---|---|
| | | | Current Address | | |
| Client | West, Kenneth | | PD/APD# | 16AD03087 | |
| | | | Court# | F15904838 | |
| | | | Attorney | Baly, Scott | |

**Narrative**

I met with Shaun White, DOB: 03/24/79 at ████████████████ at approximately 11:20 a.m. on March 16, 2016. I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I showed Shaun my county issued identification badge and gave him my business card. I asked Shaun if he would be willing to give me a statement. He agreed and stated as follows:

Shaun White met Kenneth West sometime in 1996 or 1997, when Kenneth, George Williams and Darrell Williams moved next door to Shaun's residence. Shaun was either fifteen, sixteen or seventeen years old during that time. Kenneth lived next door for about one to one and a half years. When Kenneth lived next door, Shaun visited Kenneth's house every day after school and on weekends.

Kenneth was liked by people and he had a good reputation in the community. Shaun described Kenneth as "salt of the earth people." He explained Kenneth was an all-around good guy with traits that are rare nowadays. Kenneth was an honest person who was always available to lend a hand to whoever needed. Moreover, Kenneth was always respectful toward Shaun and everyone. Kenneth never did anything inappropriate to Shaun and Shaun also never saw Kenneth behave inappropriately with anyone.

Shaun was told Kenneth was accused of molesting "Timmy." Timmy was Darrell's wife's son from a previous marriage. Shaun stated, "These charges against him are bullshit."

E. Gonzalez

**Witness Interview**

| | | | | |
|---|---|---|---|---|
| **Witness** | Brancato, Melissa   07/17/1974 | **Client** | West, Kenneth | |
| **Interviewed By** | Gonzalez, Edith | **PD/APD#** | 16AD03087 | |
| **Current Address** | | **Court#** | F15904838 | **9/11/2021** |
| | | **Attorney** | Baly, Scott | **Page 1 of 1** |

---

**Narrative**

I contacted Melissa Brancato, DOB: 07/17/74 via telephone at ███████ at approximately 3:30 p.m. on June 21, 2016. I verbally identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I asked Melissa if she would be willing to give me a statement. She agreed and stated as follows:

Melissa has known Kenneth for about seventeen years. Melissa's ex-husband was raised by Kenneth's wife, Sherrie. Melissa's children used to call Kenneth, "Pappa Ken." Melissa has not seen Kenneth in almost fourteen years, but she kept in touch (via telephone) with Kenneth and Sherrie for the last four or five years.

Melissa heard about the allegations against Kenneth from her sixteen year-old daughter, Haley. Haley was shocked and told Melissa, "They're lying mom." Melissa did not believe the allegations against Kenneth either. She stated that it did not make sense.

Melissa explained that Kenneth was around Haley and Melissa's seventeen year-old son, Johnathon when they were children. Melissa also saw Kenneth around other children and she "never ever saw anything inappropriate" from Kenneth. Kenneth always seemed to be the most grounded person in the family. Kenneth was also the type of person who always asked if anyone needed anything and he was always willing to help. He always made sure everyone was fine. Kenneth and Sherrie were both "super kind" people who helped and also bought gifts for everyone.

**Witness Interview**



| | | | | |
|---|---|---|---|---|
| **Witness** | Tobares, Jesus  02/27/1985 | | **Client** | West, Kenneth |
| **Interviewed By** | Gonzalez, Edith | | **PD/APD#** | 16AD03087 |
| **Current Address** | | | **Court#** | F15904838 |
| | | | **Attorney** | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

---

I met with Jesus Tobares, DOB: 02/27/85 at ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ at approximately 11:40 a.m. on June 22, 2016.  I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West.  I showed Jesus my county issued identification badge and gave him my business card.  I asked Jesus if he would be willing to give me a statement.  He agreed and stated as follows:

Jesus has been employed at Hart and Cooley as a "fabricator" for about eleven years.

Jesus knew Kenneth West from work.  When Jesus was hired, Kenneth was already working there. Kenneth worked in maintenance so Jesus worked closely with Kenneth when mechanical problems came up.

Jesus stated that he had a good working relationship with Kenneth.  Kenneth was the type of person who was fun to work with because he was playful person who joked around a lot.  Jesus never saw Kenneth as a violent person.  Furthermore, Kenneth had a good reputation at work because he got along with everyone. Jesus never heard anything bad about Kenneth from other employees.

Jesus heard Kenneth was arrested for "molestation or something like that."   From what he knew about Kenneth at work, that would have never crossed Jesus' mind about Kenneth.  However, Jesus did not know Kenneth's personal life outside of work.  His only relationship with Kenneth was work related.


E. Gonzalez

**Witness Interview**



| | | | | |
|---|---|---|---|---|
| **Witness** | Cummings, Daniel   07/18/1959 | | **Client** | West, Kenneth |
| **Interviewed By** | Gonzalez, Edith | | **PD/APD#** | 16AD03087 |
| **Current Address** | | | **Court#** | F15904838 |
| | | | **Attorney** | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

I met with Daniel Cummings, DOB: 07/18/59 at 45133 Sand Creek Road, Squaw Valley, CA at approximately 1:15 p.m. on March 16, 2016. I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I showed Daniel my county issued identification badge and gave him my business card. I asked Daniel if he would be willing to give me a statement. He agreed and stated as follows:

Daniel has known Kenneth West for about twenty years. He met Kenneth when Kenneth moved next door. When Kenneth lived next door, Kenneth used to come to Daniel's home almost every day, especially whenever, Kenneth's roommates, Darrell and George had parties. Daniel did not understand why Kenneth hung out with Darrell and George if Kenneth was not like them. Kenneth was not a "partyer." Kenneth was a good person and the type who would help you if needed help.

Daniel rarely saw children at Kenneth's house. However, when children were present, Kenneth never showed interest in hanging out with them. Kenneth had contact with the children, but only when Sherry came to live with Kenneth. Sherry spoiled the children and she took Kenneth along.

Daniel did not believe the allegations against Kenneth because it was out of Kenneth's character. Kenneth would be the last person Daniel would suspect because "Ken is just not that kind of guy." Daniel added that he never witnessed any inappropriate behavior from Kenneth. Furthermore, Daniel's son, Shaun was at Kenneth's house all the time and Shaun always spoke highly of Kenneth.

Daniel added that Detective O'Neil came to his house. The detective asked Daniel who Shaun was and he mentioned that Shaun was either a victim or a witness of the alleged incident. The detective said he wanted to speak to Shaun. Shaun called the detective, but the detective never called Shaun back.

**Witness Interview**



| | | |
|---|---|---|
| **Witness** | Gardner, Shane  01/22/1965 | |
| **Interviewed By** | Gonzalez, Edith | |
| **Current Address** | | |

| | |
|---|---|
| **Client** | West, Kenneth |
| **PD/APD#** | 16AD03087 |
| **Court#** | F15904838 |
| **Attorney** | Baly, Scott |

**9/11/2021**
**Page 1 of 1**

**Narrative**

I interviewed Shane Gardner, DOB: 01/22/65 via telephone at approximately 10:38 a.m. on May 27, 2016.
I verbally identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's
Office and explained that our office represents Kenneth West. I asked Shane if he would be willing to give
me a statement. He agreed and stated as follows:

Shane met Kenneth West in the mid 1980's. Shane considered Kenneth a good friend. He added that they
spent a lot of time together throughout the years. He described Kenneth as a good guy who always helped
anyone who needed help.

When Shane heard Kenneth was accused of "molestation", it just blew him away. Shane did not believe the
allegations against him because Kenneth was always a good person who never seemed like that type of guy.
Furthermore, Kenneth lived in Squaw Valley, CA for a long time, and Shane never heard anything negative
about Kenneth in the community. Kenneth was liked by a lot of people.

**Witness Interview**



| Witness | Cummings, Sherry   04/12/1953 |
| Interviewed By | Gonzalez, Edith |
| Current Address | |

| Client | West, Kenneth |
| PD/APD# | 16AD03087 |
| Court# | F15904838 |
| Attorney | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

I met with Sherry Cummings, DOB: 04/12/53 at [redacted] Squaw Valley, CA at approximately 12:00 p.m. on March 16, 2016. I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I showed Sherry my county issued identification badge and gave her my business card. I asked Sherry if she would be willing to give me a statement. She agreed and stated as follows:

Sherry Cummings met Kenneth West when he moved next door, sometime in 1996 or 1997. After Kenneth moved in, Darrel and George moved in with Kenneth. Darrel and George were brothers. Sherry had the opportunity to get to know Kenneth because he frequently came to Sherry's house. Kenneth came to Sherry's house when Darrel and George began to have parties. Kenneth worked all the time and he just wanted to get away from the parties.

Sherry added that although it was uncommon for kids to come over Kenneth's house, Kenneth was the type of person who did not want to be bothered with kids. When kids came to Kenneth's house, Kenneth would come to Sherry's house, but the kids would come to look for him. Kenneth would send the kids off with their mother and he would mention to Sherry they were not his responsibility.

She described Kenneth as responsible person who worked all the time. He also worked for the Mountain Fire Department as a volunteer Fire Fighter. Sherry stated Kenneth was a nice person and everyone who knew Kenneth liked him.

Sherry was molested as a child and due to her own experiences, she does not believe the allegations against Kenneth.

E.Gonzalez

**Witness Interview**



| | | | | | |
|---|---|---|---|---|---|
| **Witness** | Balladarez, Ray 12/10/1976 | | **Client** | West, Kenneth | |
| **Interviewed By** | Gonzalez, Edith | | **PD/APD#** | 16AD03087 | |
| **Current Address** | | | **Court#** | F15904838 | |
| | | | **Attorney** | Baly, Scott | |

9/11/2021
Page 1 of 1

---

**Narrative**

I met with Ray Balladarez, DOB: 12/10/ at ▮▮▮▮▮▮▮▮ Reedley, CA at approximately 12:10 p.m. on March 17, 2016. I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I showed Ray my county issued identification badge and gave him my business card. I asked Ray if he would be willing to give me a statement. He agreed and stated as follows:

Ray Balladraez worked with Kenneth West at Hart and Cooley in Sanger, CA. They worked closely together for about seven to ten years in 2000-2007. Timmy worked at Hart and Cooley as well, however, Timmy was more of a "thug." Ray believed Timmy was Sherry's nephew. Sherry was Kenneth's wife. Eventually, Kenneth became Ray's boss for about one year, until Ray left the company. When Ray left the company, they stayed in touched through Facebook.

Ray described Kenneth as the type of person who was "very upfront." Kenneth spoke his mind all the time. If Kenneth did not like you, he would tell you. He never held anything. Ray stated that Kenneth was "what you see is what you get" and he never played games.

When Ray worked with Kenneth, Kenneth was very family oriented. Kenneth asked about Ray's family and he constantly talked and showed Ray pictures of Cody. Cody was Timmy's son. In most pictures, Kenneth was with Cody and Sherry. Kenneth took trips with Cody and Sherry, as of Cody was his grandkid. In all the pictures Ray saw, Cody seemed happy, "Like he was having the time of his life." It appeared Kenneth just wanted to have a happy life with his wife and it appeared Cody was really involved in their lives. It was to the point where Sherry and Kenneth helped out Timmy with his finances. Whenever the opportunity came up, Timmy would let Kenneth and Sherry take Cody. Sherry would be devastated whenever Timmy did not allow Cody to be with them. The last time Ray saw pictures of Cody, he believed Cody was approximately three years old.

When they all worked together, there were times when Timmy and Kenneth did not get along. However, for a while, Kenneth would even provide transportation for Timmy to work.

Ray ran into Kenneth and Sherry at Town & Country Supermarket about two years ago. Kenneth mentioned he obtained a new job in Reno. Kenneth and Sherry made it sound like his job was a secret, as if no one knew. They specifically mentioned they did not want Timmy to know, but they did not say why.

Ray was shocked when he heard the allegations against Kenneth. Ray could not understand why Timmy would allow Cody be with Kenneth if Kenneth allegedly did something inappropriate to Timmy. It did not make sense to Ray.

**Witness Interview**

| | | | | | |
|---|---|---|---|---|---|
| **Witness** | Marcial, Manuel | 04/14/1960 | | **Client** | West, Kenneth |
| **Interviewed By** | Gonzalez, Edith | | | **PD/APD#** | 16AD03087 |
| **Current Address** | | | | **Court#** | F15904838 |
| | | | | **Attorney** | Baly, Scott |

9/11/2021
Page 1 of 1

---

### Narrative

I met with Manuel Marcial, DOB: 04/14/60 at ███████████████ CA at approximately 10 a.m. on June 22, 2016. I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I showed Manuel my county issued identification badge and gave him my business card. I asked Manuel if he would be willing to give me a statement. He agreed and stated as follows:

Manuel is the Engineering Manager at Hart and Cooley, where Kenneth worked in the past. He met Kenneth at work, approximately ten years ago. Manuel was Kenneth's supervisor and he may have hired Kenneth.

Manuel heard about the alleged incident a few months ago, when their plant manager, David Daniel received a short letter from Kenneth. From what Manuel remembered, Kenneth wrote that he was charged of molesting either his nieces or someone in his family. Kenneth claimed he was innocent and he was going to fight as much as he could.

While Kenneth worked at Hart and Cooley, Kenneth was a very good worker. He was reliable, was always on time and he worked many hours. Kenneth was the type of employee who seemed to have a good rapport with everyone he worked with. Manuel believed no one ever complained to him about Kenneth and he liked Kenneth.

Approximately two years ago, when Kenneth found another job, Manuel "hated to see him leave" because Kenneth was a good asset to the company.

E. Gonzalez

**Witness Interview**



| | | | | |
|---|---|---|---|---|
| **Witness** | Marzek, Dennis 01/17/1951 | | **Client** | West, Kenneth |
| **Interviewed By** | Gonzalez, Edith | | **PD/APD#** | 16AD03087 |
| **Current Address** | | | **Court#** | F15904838 |
| | | | **Attorney** | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

I met with Dennis Marzek, DOB: 01/17/51 at ▮▮▮▮▮▮▮▮▮▮▮▮▮ CA at approximately 10:35 a.m. on June 22, 2016. I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I showed Marzek my county issued identification badge and gave him my business card. I asked Marzek if he would be willing to give me a statement. He agreed and stated as follows:

Dennis met and trained Kenneth approximately ten years ago, when Kenneth began to work at Hart and Cooley. They got along well and became good friends.

Dennis described Kenneth as a "really nice guy" who would do anything for anyone. Kenneth was the type of person who always joked around. He was a "happy go lucky guy." Everyone at work got along with Kenneth and Kenneth always went out of his way to help other employees if they needed help. Dennis never heard anything negative about Kenneth.

Dennis heard about the allegations against Kenneth from "Tim." Tim was somehow related to Kenneth. Tim is a current employee at Hart and Cooley. Tim told Dennis that Kenneth was arrested for "child molestation" and for warrants Kenneth had in other states. Dennis believed Tim told him that Kenneth molested "Cody" and he also mentioned Kenneth changed his name. Dennis does not know Cody, but he heard of Cody through Kenneth. Dennis only knew that Cody was somehow related to Kenneth's wife, Sherrie.

Dennis stated the allegations against Kenneth did not make sense to him because Kenneth always talked about Cody at work. Kenneth talked about all the fun things he and Sherrie did with Cody. From his conversations with Kenneth, it appeared Kenneth really liked Cody and they had a strong bond.

Dennis also did not believe the charges because they were out of Kenneth's character. Dennis stated, "It's not like him" to do something like that. Kenneth was the type of person who helped people, not hurt people.

E. Gonzalez

**Witness Interview**



| | | | | |
|---|---|---|---|---|
| **Witness** | Brancato, Melissa  07/17/1974 | | **Client** | West, Kenneth |
| **Interviewed By** | Fung, Randy | | **PD/APD#** | 16AD03087 |
| **Current Address** | | | **Court#** | F15904838 |
| | | | **Attorney** | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

I contacted MELISSA BRANCATO by phone at about 10:30 AM, 05/03/18. I identified myself as an investigator with the Public Defender's Office and informed her that my office represents KENNETH WEST in this matter.

BRANCATO gave her date of birth as 07/17/74. She said that KEN WEST is ex-husband's (JOHNNY ROSA) stepfather. She is currently living at 101 Constitution in Vacaville.

I asked BRANCATO about her being present at JEAN COREY's death and she said that her family drove in to Nevada from San Jose and arrived about five minutes after she passed. I asked her if she recalled TIMOTHY DURHAM being there and she said that MELISSA DURHAM and ETHEL were there  but she did not recall TIMOTHY DURHAM being there and if he had been there he would have been with his mother.

BRANCATO said that she stayed in Nevada a couple more days and does not recall TIMOTHY DURHAM ever showing up. I asked her if DURHAM could have been there before JEAN COREY's passing and she said that she was talking to SHERRY WEST on the phone several times a day before JEAN passed and SHERRY would have mentioned TIMOTHY being there if he had been there and she said that she did not.

Submitted 05/04/17
Randy Fung
Defense Investigator

**Witness Interview**



| | | | |
|---|---|---|---|
| **Witness** | Cummings, Sherry 04/12/1953 | **Client** | West, Kenneth |
| **Interviewed By** | Fung, Randy | **PD/APD#** | 16AD03087 |
| **Current Address** | | **Court#** | F15904838 |
| | | **Attorney** | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

---

I contacted SHERRY CUMMINGS by phone at about 1:55 PM, 03/06/18. I identified myself as an investigator with the Public Defenders Office and informed her that my office represents KEN WEST in this matter.

CUMMINGS gave her date of birth as 04/12/53. She is the wife of DAN CUMMINGS.

I asked CUMMINGS about an incident reported by TIMMY DURHAM in which she and her husband almost caught WEST in the act of molesting DURHAM while parked on the side of the road. CUMMINGS said that she didn't recall any such incident and does not believe any such incident happened.

CUMMINGS explained that she is an EMT for the local volunteer fire department and that she is a mandated reporter. She said that if she had came upon a car with WEST and DURHAM in it and if anything looked slightly suspicious, she would have reported it or done something about it. She said that she has gotten involved in an unrelated matter when she saw a man with a minor that to her looked suspicious and that she would have done the same thing with WEST if she had thought anything was going on.

Submitted 03/07/18
Randy Fung
Defense Investigator

**Witness Interview**

| | | | | |
|---|---|---|---|---|
| **Witness** | Cummings, Daniel   07/18/1959 | | **Client** | West, Kenneth |
| **Interviewed By** | Fung, Randy | | **PD/APD#** | 16AD03087 |
| **Current Address** | | | **Court#** | F15904838 |
| | | | **Attorney** | Baly, Scott |

9/11/2021
Page 1 of 1

---

**Narrative**

DANIEL CUMMINGS contacted me by phone at about 1:30 PM, 03/06/18 in response to a card left at home. I identified myself as an investigator with the Public Defenders Office and informed him that my office represents KEN WEST in this matter.

CUMMINGS gave his date of birth as 07/18/59. He said that he has been a friend of KEN WEST since 1996 when he moved into the neighborhood.

I asked CUMMINGS about an incident in which TIMMY DURHAM said that he and his wife, SHERRY CUMMINGS almost caught WEST molesting him while parked on the side of the road. CUMMINGS said that he had heard this story about how he almost caught WEST in the act of molesting DURHAM and he said that he has been thinking about this and he said that he does not recall any incident where he ever came upon WEST in a car parked alongside of the road. He added that he does not recall ever seeing DURHAM and WEST in a car together.

Submitted 03/06/18
Randy Fung
Defense Investigator

**Witness Interview**



| | | | | |
|---|---|---|---|---|
| **Witness** | Montoya, George   03/23/1948 | **Client** | West, Kenneth | |
| **Interviewed By** | Fung, Randy | **PD/APD#** | 16AD03087 | |
| **Current Address** | 5200 S. Los Altos Parkway #103, Sparks, NV (775) 622-8145 | **Court#** | F15904838 | **9/11/2021** |
| | | **Attorney** | Baly, Scott | **Page 1 of 1** |

---

**Narrative**

I contacted GEORGE MONTOYA by phone at about 10:00 AM, 02/27/18. I identified myself as an investigator with the Fresno County Public Defender and informed him that my office represents KENNETH WEST in this matter.

MONTOYA gave his date of birth as 03/23/48.

MONTOYA said that he has known WEST for over 25 years. He said that WEST's wife, SHERRY WEST, is the sister of his girlfriend PATRICIA CORRIEO and the sister of ETHEL DURHAM.

I asked MONTOYA about JEAN COREY and he said that COREY lived with them for about a year until her cancer returned and then she moved in with her daughter SHERRY WEST and her husband, KEN WEST in Squaw Valley. I asked him if he recalled the DURHAM family coming to visit her in Reno before she moved and passed away and he said that he didn't recall the family coming to Reno to visit JEAN COREY. He said that the DURHAM family was financially strapped and was unable to afford a trip to Reno at the time and that they didn't come to Reno until after JEAN COREY passed away on 08/29/2001. He said that TIMMY DURHAM was probably around 5 or 6 at the time and recalls that they only stayed for a couple of days.

I was unable to interview PATTY CORRIEO. MONTOYA said that CORRIEO is deaf.

Submitted 02/28/18
Randy Fung
Defense Investigator

| | | | | |
|---|---|---|---|---|
| **Witness** | Cervantes, Jessie  12/24/1952 | | **Client** | West, Kenneth |
| **Interviewed By** | Gonzalez, Edith | | **PD/APD#** | 16AD03087 |
| **Current Address** | | | **Court#** | F15904838 |
| | | | **Attorney** | Baly, Scott |

9/11/2021
Page 1 of 1

## Narrative

I met with Jessie Cervantes, DOB: 12/24/52 at [redacted] Sanger, CA at approximately 11:10 a.m. on June 22, 2016. I identified myself as Edith Gonzalez, Defense Investigator with the Fresno County Public Defender's Office and explained that our office represents Kenneth West. I showed Jessie my county issued identification badge and gave him my business card. I asked Jessie if he would be willing to give me a statement. He agreed and stated as follows:

Jessie Cervantes is the Production Manager at Hart and Cooley in Sanger, CA. He met Kenneth West when Kenneth began to work at Hart and Cooley as a "maintenance person," approximately ten years ago. Kenneth worked under Jessie's supervision for a short period of time.

Jessie only had positive comments to say about Kenneth. He stated that Kenneth was an easy going guy who had an excellent work relationship as a team. He was also very helpful and knowledgeable in his position. He described Kenneth as a good guy. Jessie had good rapport with Kenneth on a personal and work level.

Although Jessie did not hang out with Kenneth outside of work, Jessie considered Kenneth a friend. During work, Jessie took breaks and had lunch with Kenneth and they talked about non-work related stuff. Kenneth always talked about his family. From what Jessie gathered, Kenneth always seemed to help out Tim Durham family. Tim is Kenneth's nephew and is currently employed by Hart and Cooley. Tim was also the individual accusing Kenneth. Due to that reason, Jessie had not been in contact with Kenneth or his wife, Sherrie. Moreover, Tim had attendance issues at work, that could jeopardize Tim's position at work and Jessie did not want Tim to think he was being singled out because Jessie was supporting Kenneth. Jessie stated that the two things were separate issues so Jessie was trying to stay out of it.

Jessie was extremely saddened when Kenneth left his job at Hart and Cooley because Jessie lost a team partner and friend.

Lastly, Jessie stated he would do anything to help Kenneth because he believed in his innocence.

E.Gonzalez

Kenneth J. West  #BH0941
VSP
PO BOX 96
Chowchilla, CA 93610

A violation of federal due process rights to be free from compelled self incrimination. Without compelled incrimination, petitioner was stuck arguing his innocence, while fatally diminishing any attempt to confront the time frame proposed by prosecution that these changes were appropriately brought. It effectively tied the hands of the petitioner's attorney behind his back, where inclined to object to the statue; he could not do so without prejudicing the case and admitting a crime had occurred. Thus, he failed to object to the statue, and therefore a large portion of criminal charges were levied against the petitioner uncontested.

This is the case before the court. That the charges were brought inappropriately after the statue had run, and that petitioner could not properly raise an objection even if situated to do so without self incrimination and admission of an offense. Were the attorney willing to object and make a stand, he could not lawfully do so. However this was further diminished by the attorney's extreme bias to the case.

Petitioner is not piecemeal trying his case. He is under order from a higher federal court where a stay has been granted, to exhaust issues in the state courts. Petitioner has the right to bring forth issues within a reasonable time and is subject to the rules that issues may be brought if they were not previously discoverable. The federal court has made notation of petitioners timely advancements of his case is issuance of the stay order and the court's argument that petitioner is untimely is entirely unavailing.

Petitioner has complied with the higher courts instructions and is exhausting state level reviews. We hereby reassert the entirety of our previous claims as they were submitted and our contentions that the court's ruling is wrong and subject to review.

Kenneth J West
#BH0941

August 20, 2018

Charlene West-wife of Ken West
Temporary address:
3115 West Hampton Way
Fresno CA 93722

Judge Brian Aleverz
Dept. 20 of the Superior Court
Fresno CA 93722

RE: K41-288.5- Kenneth West
Case #: 150004123.2

Judge Brian Aleverz;

There were people that came to the sentencing court of Kenneth West so they could tell the court what they did not get to say on the stand. Two of these people, even with their illnesses came to tell the truth. Scott Bailey told them he would ask and instant he did not bring up or ask any question for the reason they were on the witness stand. Their names were stated in transcript as witnesses to an alleged act of molestation in a car on the side of the road. This is not true and they wanted that brought up so they could tell the court this is all lies. The wanted to clear up the charge against Ken and that they never witnessed anything like that nor would they have stood there waiting until everything was taken care of then have a conversation with the person in the car. They feel this is also an insult to their integrity and wanted to say so in their impact statement.

This letter is also regarding the statement you made at the end of court. There were loved ones and friends in the court that heard this statement. We all were very upset due to the untruths you spoke. If you were listening to the witnesses on the stand you would have heard CV3, Russell say he did not know the family of CV2, Tim and CV1, Cody. However when CV2 was on the stand he did say yes he know Russell they had all lived together and played together everyday, in which they did. Russell his two sisters and mother did life with another family, which is CV2's family, his sister and mother along with two other men, Tim's now stepfather, Darrel Williams and Ken West. Between 1995 and 1996 all nine of the named here lived

together in the same home. In your statement, you said the three victims did not know each other. We all know you did not follow the testimonies or you would not have made the statement when you called Ken West as "serial molester". I wanted you to know I thought your last statement was very inappropriate and if you had listened to the witness, that yes, they all knew each other and lived together, you would not have made that inappropriate statement. There were so many inconsistencies that were said from the witness stand that I hoped as a judge you would have heard and perhaps questioned for the truth. Russell has not lived in California for over 20 years, how did anyone know to contact him? Russell's mother was contacted by Ethel Williams, the mother of Tim before they even spoke with the police. Ethel Williams is friends with Russell's mother Gena. They talked this all over before the police were contacted.

This case, a believe, is just another case for you. However, this is a man that has already spent three years in jail and now going to prison for the rest of his life due to lies and people that can do this to someone and not think twice about taking our lives from us. This family has already been in the Fresno courts with another young man they put away, and their getting away with it again.

I hope you did take the time to read this letter; I needed you to understand how we all feel. There are just so many questions and answers that was not asked or answered and I had to let you know.

*Charlene West*

Charlene West-Kenneth West's wife

KENNETH JAMES WEST   # BH0941
VSP
PO Box 96
CHowcHilla, CA. 93610

**ATTACHMENT #1**

**Trial counsel failed to properly object to statute of limitations.**

Trial counsel failed to properly object to statute of limitations. Counsel failed to raise a meaningful objection to petitioner being charged and brought to trial after the statute of limitations had expired. Counsel had a duty to make an objection as charging client was a violation of his due process rights. Petitioner should never have been brought to trial on any of the charges for which he is convicted. After the conviction, the court imposed an unlawful sentence. In addition, counsel failed to object to petitioner being unlawfully tried and unlawfully sentenced.

This court should review statute of limitations on each count and verify this is an illegal sentence. A sentencing error may be corrected at any time. Case should be dismissed and petitioner Released from unlawful custody.

**Trial counsel failed to present witness testimony favorable to the defense. Counsel did not appraise petitioner of relevant discovery in regards to expert witness testimony. Counsel mishandled witness testimony and failed to secure witnesses or object or respond by cross-examination to potential witness perjury.**

Trial counsel failed to present witness testimony favorable to the defense. This was not simply bad trial strategy this deprived petitioner of witnesses in his favor which would have created an avenue of reasonable doubt as to his commission of the offense. There was no conceivable tactical reason as to why the counselor would act to omit expert testimony

favorable to the defense. Per California Criminal defense practice 70.21 (A) counsel had a duty to solicit mitigating information in regards to refuting the charges.

Counsel failed to research and present defense witnesses. In particular and most alarming the omission of direct character witness testimony of petitioner Wife. The prosecution introduced character evidence. (EV C§1108(A). defense is permitted to introduce any three types of character evidence. Opinion evidence, reputation evidence and evidence of specific incidents of conduct.

In the trial petitioner wife was subpoenaed and told she was a prosecution witness. She was barred from sitting in the trial room, as she was a per-say witness. In addition, not allowed to view the proceedings. The prosecutor never called her. Moreover, petitioner Counsel failed to ever call her as a defense witness. The prosecution presented a very old case based on character testimony. In addition, petitioner was deprived of a key alibi witness to his character by counsel's failings. Petitioner Wife would have introduced direct witness testimony of the accusers bad conduct and desire to retaliate upon petitioner She would have introduced evidence repudiating the testimony of the accusers. The failure by counsel to even consider her as a witness despite the fact the prosecution did consider her of value to subpoena by adding her as a witness, shows counsel was defective in presenting a defense. At the very least, the court should have determined value of her testimony pretrial. Counsel had a duty. Petitioner was deprived by his lawyer's deficiency of his constitutional right to confront his accuser by presenting direct testimony refuting the alleged acts.

Counsel did not ever divulge the existence of the private investigators findings to petitioner as defendant. Violating the rules of discovery and keeping his client informed. Counsel had a duty to inform the client of developments of the case per statute. Moreover, did so fail in that duty. Counsel failed to provide private investigator testimony, which could have opened avenues of reasonable doubt or constituted and basis for admitting evidence favorable to petitioner. Petitioner Wife was contacted by private investigator who told his wife he had very important findings for her husband. Then, neither petitioner nor his wife ever saw a single report or finding. Counsel did not call the expert witness nor present findings to petitioner under discovery rules. Petitioner found this private investigator this year, and was informed the investigator could not discuss it.

Counselors mishandling extended to the primary victims. When petitioner requested counselor press the victims who were then adults as to the crime counselor refused. Stating "they are not on trial here you are". One witness perjured himself as the testimony conflicted prior statements. In addition, counselor dismissed the witness/accuser who could have impeached the perjury and deprived petitioner of meaningful right to confront his accusers. Perjured testimony was allowed to stand on the record.

The court should conduct a post-conviction discovery on the expert testimony from the private investigator and turn that information over to the defendant/petitioner as dictated by the rules of discovery. Pursuant to §1054.9 a defendant convicted of serious felony of over 15 years preparing a petition for writ may seek post-conviction discovery on showing of good faith efforts at obtaining discovery from trial counsel. and receive oral statement under

oath from wife of petitioner And enter this testimony on the official record as witness testimony. Alternatively, dismiss this case and release petitioner from custody.

## Trial counsel made prejudicial comments in regards to the case. Indicating state of mind and hostility to client.

Trial counsel was personally heard by petitioner Wife pre-trial discussing with the prosecutor and two witnesses how many years petitioner should receive. Before trial, counsel approached petitioner Wife and told her she should "sell petitioner Properties and move on" counsel became extremely rude and abusive to petitioner this led to petitioner directly attempting to remove the counselor for prejudice and hostility to the case.

## ATTACHMENT #2

## Judicial abuse of discretion.

Petitioner was charged and brought to trial after the statute of limitations had expired. In a direct violation of his due process rights. Petitioner should never have been brought to trial on any of the charges for which he is convicted. The judge abused his discretion by even allowing oral argument as to why prosecution should be permitted to bend the statute. This was open and shut in regards to timelines. There should have been no argument. Petitioner was and is unlawfully detained. As before stated, Trial counsel was personally heard by petitioner Wife pre-trial discussing with the prosecutor and two witnesses how many years petitioner should receive. Before trial, counsel approached petitioner Wife and told her she should "sell petitioner Properties and move on" counsel became extremely rude and abusive

to petitioner. This led to petitioner directly attempting to remove the counselor for prejudice and hostility to the case. On 12/8/2016 petitioner as defendant motioned under Marsden before the court to remove counsel as hostile to the case. The judge refused. On 5/21/2018 petitioner was convicted at trial with the hostile attorney representing him.

After trial, petitioner filed a state bar complaint and petitioned the court under Marsden to remove counsel a second time. The judge refused.

The appellate courts have recognized that it takes time to prepare a case. In addition, has historically rejected claims that occurred during trial itself. In this case however, it was almost two calendar years before his trial that petitioner Made his request before the court to terminate the attorney. The attorney's rights to represent his client would not have been abused. Moreover, much time was available for a new attorney to step in and handle the case. The court stuck petitioner with an openly hostile attorney who made incredibly dire and disturbingly inappropriate remarks to petitioner Wife. It played out in open view, as counsel was deliberately deficient and ineffective in his representation at trial. Petitioner Submits that the attorney acted with malice and hostility to the case and trial court severely erred in judgment. Abusing discretion to dismiss.

During sentencing, the court sentenced petitioner to over 100 years to run consecutive. This is a violation of petitioner Amendments rights for two reasons. 1. The sentence is based on an unlawful conviction past the statute of limitations to bring the charges. 2. The sentence is cruel and unusual. It is more than a convicted murderer would receive. Therefore extremely imbalanced and disproportionate to the offense and it is a virtual LWOP sentence. By

running the charges as consecutive, it ensures petitioner will never see board of parole hearings and be deprived of liberty past his natural life expectancy. Ensuring he will die in prison if relief is not granted.

The court abused its discretion by permitting and imposing an unlawful sentence and a cruel and unusual sentence.

**Action requested.**

As a sum, the errors result in a more than unconstitutional sentence. Petitioner is entitled due to the nature of the offense itself to a higher standard of review concerning these errors. (See statutes) petitioner is requesting the court do the following.

1) Recognize that the case was brought past statute of limitations and dismiss case. Release petitioner from custody.

2) State specific reasons on record in decision why case was not brought past statute if the court disagrees with this contention. In addition, grant request #3, #4, 🖎

3) Remand to trial court for resentencing or new trial.

4) Conduct post-conviction discovery on the private investigator report and witness testimony of petitioner wife.

Statutes:

1. Since, in prosecutions for offenses against children "no charge can be more easily made and none more difficult to disprove" any procedural error must be carefully considered to

KENNETH JAMES WEST

determine whether rights of defendant where prejudiced. – **People V. jones (Cal 1954) 42 CAL 2d 219, 266 P.2d 38, 1954 Cal lexis 168**

**2.** Errors committed in trial by either prosecution or court, which might be considered trivial and as of no material consequence from standpoint of adverse effect on defendant rights, may become of great importance in prosecution for lewd conduct with children. **People V. Lyons (Cal 1956) 47 Cal. 2d 311, 303 P 2d. 329, 1956 Cal. Lexis 280**

1  **ATTACHMENT#2 "in support of grounds previously submitted to superior court**

2  **(attch.#1)**

3  **Reassertation that the attorney was wholly deficient and openly prejudiced to the case.**

4  **That these failings constitute innefective assistance of trial counsel.**

5      The requirement to object in opposition to the exception clause in the penal code in

6  regard to the timeframes of the cases being charged is self evident, an attorney has a fundamental

7  obligation to strenously object to the introduction of charges, especially when those charges, if

8  uncontested, create a pathway from a sentence of 15 to life to a 150 year + sentence. The

9  attorney failed to object to the introduction of new criminal charges that opened an alternative

10  sentencing scheme. He was deficient in that he presented no evidence to counter the claims that

11  the alleged acts factually occurred on the stated dates. Alarmingly, the District attorney

12  attempted to introduce other charges into this lumping of cases and was rebuffed by the judge,

13  the attorney had a fundamental duty to protect his clients interest and present evidence that not

14  only did the charged acts not occur, BUT ALSO that the specific acts did not occur on the

15  alleged date.

16  Kenneth West was accused of lewd acts. Those lewd acts where alleged to have occurred within

17  a specified time frame in order to bring those charges past the statute of limitations. Mr West's

18  attorney permitted the lumping of charges and by failing to object, quite possibly failed to

19  preserve his rights on appeal. It is Mr. Wests contention that he does not waive his right to

20  contest that these allegations are false and did not occur. Nor does he waive any objection to the

21  sentence or charges levied against him.

It is Mr. West's contention that his attorney was openly hostile to the case, made prejudicial statements on the case to his clients wife to sell her husbands belongings and move on with her life, that the attorney asked Mr. Wests wife how many years she believed he could get.

Refusal by attorney to present character evidence; with character being the main issue for a total lack of physical evidence Mr. West committed this offense, in this case, *with nothing more than an allegation.* The motives and character of the witnesses and victims are *paramount* to a meaningful defense. Mr. West's principle accuser Timmy Durham, at the time of the accusations, was an adult. Not a minor. And there are specific issues that where never fully adressed. This accuser should have been impeached with his documented lies and consistantly changing story in regards to this accusation. Some of the facts regarding the alleged victim and this case, as substantiated by recently aquired investigator reports are;

1. Timmy Durham (the victim) has a minor child.

2. Timmy Durham allowed his minor child unsupervised with Mr. West and his wife on multiple family vacations where he was not present, AFTER the alleged molestation would have occurred.

3. People normally do not allow their molesters to take their children on unsupervised outings and vacations. (*Because they don't want their children molested too.*)

4. Timmy Durham was receiving financial aid from Mr. West and his wife.

5. The accusations where not levied until Mr. West cut Timmy Durham off financially.

1    6. Timmy Durham Fabricated an account where he told other people that two persons

2    ~Dan Cummings~ and ~Sherry Cummings~ witnessed Mr. West in a vehicle with him, and that the

3    molestation had occurred then.

4    7. Those two alleged witnesses, adamantly denied not only the story, but that they had never seen

5    Mr. West in a vehicle at all with the victim.

6    8. When Mrs. Cummings was on the stand, counsel dismissed the witness, on record, without

7    even adressing this allegation, and immediately therafter upon an angry outburst from Mr. West,

8    Counsel jumped up and asked for one more question. Counsel entirely **FORGOT** to address

9    witness testimony that provided rebuttal evidence the victim fabricated a story about an account

10   of alleged witnessed molestation in the vehicle.

11   9. Counsel refused to recall witnesses/victims who openly comitted perjury under oath. And lied

12   about their relationship to eachother.

13   10. the court recognised and remarked on the statement that the two witnesses did not know

14   eachother, despite contradictory testimony.

15   The courts have clearly outlined that even minor errors in cases such as this are wholly

16   magnified and merit much more attention. These are NOT small meaningless issues. Compared

17   with the fact that this is alleged to surround a interfamilial dispute, a total lack of any physical

18   evidence whatsoever such as semen or dna or rape kits or any actual tangible evidence past the

19   accusations themselves, it is unimaginable that the attorney actually *buried* 18 investigative

20   reports with witness statements casting Mr. West in a favorable light. Mr. West never saw these

21   statements as discovery and was wholly unaware of some of the facts in his favor until direct

22   appeal

This should have been directly adressed. Evidence that the primary accuser has accused others as a pattern of retaliatory behavior, that the victim fabricated stories about witnesses to his claim, that the two victims knew eachother intimately yet lied about knowing eachother under oath, that 18 separate witnesses stated Mr.West had an impeccable character, hardworking, honest, caring. One witness stated that the victims family members where drug dealers, fraudsters, had alleged rapes on two other individuals they had taken grievance with. The generally accepted belief in the community of neighbors of the victims stated that these charges where made up.

It is our contention that the attorney is an legally trained advocate for the client. And that Mr. West is reliant on his attorney to perform his duties and raise meaningful defense through objection and sound legal theory, including the presentation of character witnesses favorable to the defense. Mr. West cannot possibly raise objections to the issues, the only thing that Mr. West as a client was empowered to do was object to the attorney who was representing him. the attorney was attempted to be fired not once, **but twice.** By Mr. West asserting on record that his attorney was acting against his interest, as a matter of fundamental fairness this case should have been at the very least given to another attorney. And postponed so the attorney could familiarize themselves with the case. This delay to trial would be much more preferable and in the clients interest than a 100+ year sentence.

**The act of objection to the presented and alleged timeline of the criminal acts would have required self incrimination or an alibi near impossible to provide. These facts lend authority to claim of IATC.**

To effectively challenge the lumping of charges under the alternate scheme used to defeat statute of limitations Mr. West would have to challenge the date. How does one disprove a date an act is

1    alleged to have occurred on? One must have either an alibi for himself or factual proof the

2    person was not in that area on that date to suffer victimization. Its is nearly impossible to provide

3    an alibi for a random date in ones history.

4    If we submit to you the court, an allegation that on this date three years ago, a man molested a

5    child. And again on a separate date occuring two years prior to that first date he molested the

6    same child. Could you prove where you where on that date? Could you reasonably expect him

7    to?

8    The only other way to disprove the date alleged is to admit the crime occurred, but on a prior

9    date. One must admit to knowledge of the offense at the very least, aknowledge the offense

10   occurred just not on that date. Or aknowledge the crime actually occurred in general. This

11   violates the constitunal right to be free from self incrimination. We submit that there was no

12   other option to challenege the timeline presented by the District Attorney. A timeline that

13   actually changed in real time as the District Attorney attempted to readjust the dates multiple

14   times to cram as many alleged acts into the timeline as possible. This adjusting of dates actually

15   was halted by the trial court, to an extent.

16   Mr. West had both of his hands tied behind his back.

17   In hand one,  He reasonably could not provide an alibi to the dates alleged from years ago. and

18   he cannot be compelled to admit facts or knowledge about an offense and maintain his

19   innocence. On the other hand he had an attorney who refused, at minimal best bungled

20   presentation of positive character evidence, and direct testimony that demonstrated the victim in

21   this case fabricated a story about his alleged abuse.

1    Having this deck stacked against him the aspect of positive character evidence is of all the more

2    import. Any defense absent of character testimony in favor of Mr. West would be deficient. In

3    essence, Mr. West was propped up in court, Battered with the most vile accusations and attacks

4    on his character one could have levied agaist oneself, and his attorney presented a minimal

5    defense to refute the character assassination onslaught despite the availability of mitigating

6    character witnesses.

7    Mr. West was Railroaded by a attorney who effectively abandoned the case due to bias. Mr.

8    West sought an end to that prejudice by requesting a new attorney and was rebuffed twice. Mr.

9    Wests rights to effective trial counsel where clearly violated. Further, There is not only a very

10   colorable claim of inafective assistance of counsel due to the counselors deficiency in

11   representation, there is a potential civil rights violation that occurred in relation to the

12   introduction of other charges.

13   We submit our original argument as presented to the Superior Court. And we maintain the issues

14   we have raised on this and the last appeal. In totality we request that the issues be considered as a

15   sum. This case is deserving of remand and a new trial. Maybe Mr. West would be convicted,

16   however he was not given a fair shake here. And we ask that and any action this court may

17   consider appropriate in regards to relief.

18   We further submit that we are again requesting an attorney.

19   *********